**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

MATTHEW AUBLE, JOSEPH ALTERMAN,
DON BILYEU, LEO CRITCHFIELD,
MICHAEL CROTEAU, LUCY AND
ANDREW HALLBERG, MICHAEL O'NEAL,
DANIEL PEABODY, GARY PFEIFFER,
COLLIN REESE, JIM RIEBER, MATTHEW
THOMPSON, and GUSTAV VANZYL,
Individually and on Behalf of All Others
Similarly Situated,

               Plaintiffs,

v.

WINNEBAGO INDUSTRIES, INC. and
GRAND DESIGN RV, LLC,

               Defendants.

Civil Action No: 3:25-cv-00240

Judge Damon R. Leichty

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUES.................................................................................................iii

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTS ALLEGED.................................................................................................... 2

III.    LEGAL FRAMEWORK .......................................................................................... 4

IV.    ARGUMENT ........................................................................................................... 4

      A.     Plaintiffs fail to establish personal jurisdiction over Winnebago. ...........................5

            1.     Winnebago is not subject to general personal jurisdiction in Indiana. ........5

            2.     Winnebago is not subject to specific personal jurisdiction in Indiana in this case ..........................................................................................................8

      B.     Plaintiffs' attempt to assert claims under Indiana and Minnesota law on behalf of absent class members violates due process ..........................................................9

      C.     Plaintiffs fail to plead their consumer-fraud claims with particularity .................11

      D.     Plaintiffs also fail to state individual claims under the consumer-fraud statutes...12

            1.     Plaintiffs fail to allege violations of the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA ...................................................................13

                i.     Plaintiffs fail to allege an actionable affirmative misrepresentation ...............................................................14

                ii.    Plaintiffs fail to allege actionable concealment or nondisclosure..16

                iii.   Plaintiffs fail to allege notice or an uncured deceptive act under the IDCSA...................................................................19

             2.     Plaintiffs' CCPA, GFBPA, and NHCPA claims must be dismissed because the Amended Complaint does not allege pre-sale knowledge of the alleged excessive frame flex .................................................................20

            3.     Plaintiffs fail to allege any deceptive act made "in connection" with the sale of RVs under ACFA .......................................................................22

             4.     Plaintiffs fail to allege that remedies at law would be inadequate under the CUCL ........................................................................................24

             5.     Plaintiffs fail to allege significant public impact, as required by the CCPA ...................................................................................................24

             6.     Plaintiff Peabody lacks standing to pursue a claim under the FDUTPA because his purchase has no connection to Florida ...................................25

            7.     Plaintiff O'Neal's OCSPA claim is barred by the statute of limitations ...26

      E.     Plaintiffs' negligence claims are barred by the economic loss doctrine...............27

      F.      Plaintiffs' unjust enrichment claims fail under California, Florida, Georgia, Indiana, and Ohio law ............................................................................................29

V.     CONCLUSION..................................................................................................... 30

## STATEMENT OF THE ISSUES

**A. Whether Winnebago Industries, Inc. is subject to personal jurisdiction in Indiana even though it is incorporated in and has its principal place of business in Minnesota and has a standard parent-subsidiary relationship with Grand Design, Inc.**

(Dismissal of all claims against Winnebago Industries, Inc.)

**B. Whether applying Indiana and Minnesota law to absent nationwide class members' claims would violate the Due Process Clause where most class members have no independent connection to Indiana or Minnesota.**

(Dismissal of First Cause of Action (IDCSA), Second Cause of Action (MPCFA), Third Cause of Action (MDTPA), Fourteenth Cause of Action (Negligence), Fifteenth Cause of Action (Unjust Enrichment))

**C. Whether Plaintiffs fail to plead their consumer-fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b) where they do not identify specific misrepresentations or deceptive acts giving rise to their claims.**

(Dismissal of Causes of Action Nos. 1–13)

**D. Whether Plaintiffs fail to state individual claims under the consumer-fraud statutes.**

**1. Whether Plaintiffs fail to allege violations of the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA where they do not allege actionable misrepresentations, concealment, or omissions.**

(Dismissal of First Cause of Action (IDCSA), Second Cause of Action (MPCFA), Third Cause of Action (MDTPA), Fifth Cause of Action (CFAL), Tenth Cause of Action (ICFA), Eleventh Cause of Action (NHCPA))

**2. Whether Plaintiffs fail to allege a knowing or intentional deceptive act, as required to support a claim under the CCPA, GFBPA, and NHCPA, where they do not allege facts suggesting Defendants knew about the alleged excessive frame flex at the time of Plaintiffs' RV purchases.**

(Dismissal of Seventh Cause of Action (CCPA), Ninth Cause of Action (GFBPA), Eleventh Cause of Action (NHCPA))

**3. Whether Plaintiffs fail to allege any deceptive act "in connection" with Plaintiff Auble's RV purchase, as required to support a claim under the ACFA, where they do not allege Defendants were involved in the sale or directly provided any materials to Auble relating to the sale.**

(Dismissal of Fourth Cause of Action (ACFA))

4. **Whether Plaintiffs fail to allege that remedies at law would be inadequate as required to support a claim under the CUCL, where they have not alleged that damages would be insufficient to make them whole.**

(Dismissal of Sixth Cause of Action (CUCL))

5. **Whether Plaintiffs fail to allege significant public impact, as required to support a claim under the CCPA, where they do not allege how many consumers were harmed by the challenged practice.**

(Dismissal of Seventh Cause of Action (CCPA))

6. **Whether Plaintiff Peabody has standing to pursue a claim under the FDUTPA, given that his purchase has no connection to Florida.**

(Dismissal of Eighth Cause of Action (FDUTPA))

7. **Whether Plaintiff O'Neal's OCSPA claim is barred by the statute of limitations where he alleges that he purchased his RV more than two years before this litigation was filed.**

(Dismissal of Twelfth Cause of Action (OCSPA))

E. **Whether Plaintiffs' negligence claims are barred by the economic loss doctrine because they fail to allege personal injury or damage to property other than the RVs themselves.**

(Dismissal of Fourteenth Cause of Action (Negligence), under the law of Arizona, California, Colorado, Florida, Georgia, Illinois, Indiana, Minnesota, New Hampshire, and Ohio)[1]

F. **Whether Plaintiffs fail to state claims for unjust enrichment under California, Florida, Georgia, Indiana, and Ohio law where they do not allege they conferred a direct benefit on Defendants or that they expected any payment from Defendants.**

(Dismissal of Fifteenth Cause of Action (Unjust Enrichment), under the law of California, Florida, Georgia, Indiana and Ohio)[2]

---

[1] Defendants have not sought dismissal under Oregon law pursuant to this argument.

[2] Defendants have not sought dismissal under Arizona, Colorado, Illinois, Minnesota, New Hampshire, or Oregon law pursuant to this argument.

# TABLE OF AUTHORITIES

Page

**Cases**

*ACAS Acquisitions (Precitech) Inc. v. Hobert*,
  923 A.2d 1076 (N.H. 2007) ................................................................ 14

*Adams v. FedEx Ground Package Sys., Inc.*,
  546 Fed. Appx. 772 (10th Cir. 2013) .................................................. 25

*ADT LLC v. Vision Sec., LLC*,
  No. 13-81197-CV, 2014 WL 3764152 (S.D. Fla. July 30, 2014) .......... 26

*Alpine Bank v. Hubbell*,
  555 F.3d 1097 (10th Cir. 2009) ........................................................... 25

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ................................................................ 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 4

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ......................................................... 11, 12

*Bernstein v. Extendicare Health Services, Inc.*,
  607 F. Supp. 2d 1027 (D. Minn. 2009) ........................................... 14, 15

*Bestwick v. Newmar Corp.*,
  576 F. Supp. 3d 599 (N.D. Ind. 2021),
  *appeal dismissed*, 2022 WL 18401473 (7th Cir. Feb. 11, 2022) ........... 23

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) .............................................................................. 6

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017) .............................................................................. 8

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .............................................................................. 6

*Calder v. Jones*,
  465 U.S. 783 (1984) .............................................................................. 9

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .............................................................. 11

*Castagna v. Newmar Corporation*,
    340 F. Supp. 3d 728 (N.D. Ind. 2018) ........................................................ 15

*Century Senior Servs. v. Consumer Health Benefit Ass'n, Inc.*,
    770 F.Supp.2d 1261 (S.D. Fla. 2011) ........................................................ 29

*Cho v. Hyundai Motor Co., Ltd.*,
    636 F. Supp. 3d 1149 (C.D. Cal. 2022) ........................................................ 21

*City of Chicago v. Equte LLC*,
    693 F. Supp. 3d 879 (N.D. Ill. 2023) ........................................................ 13

*City of Miami v. Citigroup Inc.*,
    801 F.3d 1268 (11th Cir. 2015) ........................................................ 29

*Connick v. Suzuki Motor Co., Ltd.*,
    675 N.E.2d 584 (Ill. 1996) ........................................................ 18

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*,
    835 N.E.2d 701 (Ohio 2005) ........................................................ 28

*Crowe v. Tull*,
    126 P.3d 196 (Colo. 2006) ........................................................ 20

*Daimler Ag. v. Bauman*,
    571 U.S. 117 (2014) ........................................................ 5, 6

*Darne v. Ford Motor Co.*,
    No. 13 CV 03594, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2017) ........................................................ 18

*Daugherty v. Am. Honda Motor Co.*,
    51 Cal. Rptr. 3d 118 (Cal. App. 2006) ........................................................ 17

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ........................................................ 11

*De Bouse v. Bayer*,
    922 N.E.2d 309 (Ill. 2009) ........................................................ 18

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ........................................................ 11

*Evans v. Wright Med. Tech., Inc.*,
    No. 319CV00160DRLMGG, 2019 WL 5390548 (N.D. Ind. Oct. 21, 2019) ........................................................ 7

*Ferron v. Metareward, Inc.*,
    698 F. Supp. 2d 992 (S.D. Ohio 2010) ........................................................ 11

*Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*,
   223 P.3d 664 (Ariz. 2010) ................................................................ 28

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
   592 U.S. 351 (2021)......................................................................... 8

*Goodyear Dunlop Tires Ops. S.A. v. Brown*,
   564 U.S. 915 (2011).......................................................................... 8

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2014) ............................................................ 29

*Graphic Comms. Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*,
   850 N.W.2d 682 (Minn. 2014) ................................................... 13, 16

*Grover v. BMW of N. Am., LLC*,
   581 F. Supp. 3d 930 (N.D. Ohio 2022)............................................ 26

*Guajardo v. Skechers USA, Inc.*,
   No. 419CV04104SLDJEH, 2021 WL 4302532 (C.D. Ill. Sept. 21, 2021) ............ 18

*Guay v. Sig Sauer, Inc.*,
   626 F. Supp. 3d 536 (D.N.H. 2022)................................................. 14

*Gunkel v. Renovations, Inc.*,
   822 N.E.2d 150 (Ind. 2005) ............................................................ 27

*Hammerschmidt v. Gen. Motors LLC*,
   583 F. Supp. 3d 1215 (D. Minn. 2022)........................................... 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984).......................................................................... 5

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ..................................................... 13, 17

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ........................................................ 10

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
   177 F.R.D. 360 (E.D. La. 1997) ................................................ 10, 11

*In re Horizon Organic Milk Mktg. & Sales Practice Litig.*,
   955 F. Supp. 2d 1311 (S.D. Fla. 2013) ........................................... 11

*In re Natera Prenatal Testing Litig.*,
   664 F. Supp. 3d 995 (N.D. Cal. 2023) ............................................ 17

*In re Takata Airbag Prods. Liab. Litig.*,
    255 F.Supp.3d 1241 (S.D. Fla. 2017) ............................................................. 30

*Indiana Farm Bureau v. CNH Indus. Am., LLC*,
    130 N.E.3d 604 (Ind. Ct. App. 2019) .............................................................. 27

*Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*,
    929 N.E.2d 722 (Ind. 2010) ....................................................................... 27, 28

*Ivie v. Mission Rock Residential LLC*,
    No. 3:21-CV-01122-SB, 2022 WL 2612215 (D. Or. May 27, 2022) ................ 12

*Jett8 Airlines, PL v. Gen. Elec. Co.*,
    No. 1–13–1816, 2014 WL 5488054 (Ill. App. Ct. 2014) .............................. 28

*Jimenez v. Superior Court*,
    58 P.3d 450 (Cal. 2002) ............................................................................... 28

*Jogani v. Superior Ct.*,
    81 Cal. Rptr. 3d 503 (Cal. Ct. App. 2008) ..................................................... 29

*Johnson v. Microsoft Corp.*,
    834 N.E.2d 791 (Ohio 2005) ....................................................................... 29

*Kampmann v. Procter & Gamble Co.*,
    699 F. Supp. 3d 678 (C.D. Ill. 2023) ............................................................. 14

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ....................................................................................... 6

*Kelton v. Hollis Ranch, LLC*,
    927 A.2d 1243 (N.H. 2007) ........................................................................... 20

*Kesling v. Hubler Nissan, Inc.*,
    997 N.E.2d 327 (Ind. 2013) .......................................................................... 15

*Ko v. Univ. of Potomac at Chicago LLC*,
    No. 24 C 1455, 2024 WL 3694489 (N.D. Ill. Aug. 7, 2024) ......................... 18

*Lehman v. Shroyer*,
    721 N.E.2d 365 (Ind. Ct. App. 1999) ............................................................ 19

*LensCrafters, Inc. v. Vision World, Inc.*,
    943 F. Supp. 1481 (D. Minn. 1996) .............................................................. 14

*Manning v. Ashcar, Inc.*,
    No. 1:19-CV-04309-SDG, 2021 WL 9596193 (N.D. Ga. Jan. 22, 2021) ........ 20

*Mekhail v. N. Mem'l Health Care*,
   726 F. Supp. 3d 916 (D. Minn. 2024).................................................. 11

*Melchior v. New Line Productions, Inc.*,
   106 Cal. App. 4th 779 (Cal. Ct. App. 2003) ....................................... 29

*Montgomery v. New Piper Aircraft, Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2002)........................................................ 26

*Nalley v. Gen. Motors LLC*,
   No. 1:21-CV-04174-WMR, 2022 WL 18459646 (N.D. Ga. Aug. 30, 2022)......................... 12

*Nguyen v. Lovesac Co.*,
   No. 2:24-CV-01293-TLN-JDP, 2025 WL 950511 (E.D. Cal. Mar. 28, 2025)....................... 24

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................ 29

*Paulk v. Thomasville Ford Lincoln Mercury*,
   732 S.E.2d 297 (Ga. App. 2012)....................................................... 20

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952)..................................................................... 6

*Peterson v. USAA Life Ins. Co.*,
   353 F. Supp. 3d 1099 (D. Colo. 2018),
   aff'd, 814 Fed. Appx. 408 (10th Cir. 2020)........................................ 24

*Peterson v. Wexford Health Sources, Inc.*,
   986 F.3d 746 (7th Cir. 2021) ......................................................... 21

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).............................................................. 10, 11

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ......................................................... 21

*Private Jet Servs. Grp., Inc. v. Sky King, Inc.*,
   CIV. 05-CV-98-JD, 2006 WL 2864057 (D.N.H. Oct. 4, 2006) ............................ 15

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ...................................................... 4, 9

*Quetot v. M & M Homes, Inc.*,
   No. 12 CO 1, 2013 WL 793219 (Ohio Ct. App. Feb. 25, 2013) ......................... 26

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
   62 P.3d 142 (Colo. 2003).......................................................... 24, 25

*Rockford Mem'l Hosp. v. Havrilesko*,
  858 N.E.2d 56 (Ill. App. 2006) ............................................................. 13

*Rogers v. City of Hobart*,
  996 F.3d 812 (7th Cir. 2021) ................................................................. 8

*Rouse v. H.B. Fuller Co.*,
  694 F. Supp. 3d 1149 (D. Minn. 2023) .................................................. 28

*RSS Fridley, LLC v. Nw. Orthopaedic Surgeons P'ship, LLP*,
  A21-0664, 2022 WL 200359 (Minn. Ct. App. Jan. 24, 2022) .................. 16

*Savett v. Whirlpool Corp.*,
  No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) ............... 30

*Shay v. Apple Inc.*,
  No. 20-cv-1629, 2021 WL 1733385 (S.D. Cal. May 3, 2021) .................. 24

*Silving v. Wells Fargo Bank, NA*,
  800 F. Supp. 2d 1055 (D. Ariz. 2011) .................................................... 11

*Sims v. New Penn Fin. LLC*,
  No. 3:15-CV-263, 2016 WL 6610835 (N.D. Ind. Nov. 8, 2016) .............. 18

*Sitterli v. Csachi*,
  811 S.E.2d 454 (Ga. App. 2018)............................................................. 30

*Smith v. Intel Corp.*,
  745 F. Supp. 3d 853 (N.D. Cal. 2024) .................................................... 17

*Song v. Champion Petfoods USA, Inc.*,
  No. 18-CV-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020),
  *aff'd*, 27 F.4th 1339 (8th Cir. 2022) ........................................... 13, 14, 16

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................. 24

*State v. TikTok Inc.*,
  245 N.E.3d 681 (Ind. Ct. App. 2024) ................................................ 13, 14

*Stewart v. Kodiak Cakes, LLC*,
  537 F. Supp. 3d 1103 (S.D. Cal. 2021).................................................... 14

*Sullivan v. Pulte Home Corp.*,
  290 P.3d 446 (Ariz. Ct. App. 2012), *vacated in part*,
  232 Ariz. 344, 306 P.3d 1 (2013) ...................................................... 22, 23

*Thacker v. Menard, Inc.*,
  105 F.3d 382 (7th Cir. 1997) .................................................................. 14

*Thornton v. CMB Entm't, LLC*,
  309 F.R.D. 465 (S.D. Ind. 2015).............................................................. 11

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
  110 So. 3d 399 (Fla. 2013) ...................................................................... 28

*Town of Alma v. AZCO Const., Inc.*,
  10 P.3d 1256 (Colo. 2000)....................................................................... 28

*Tuttle v. Lorillard Tobacco Co.*,
  118 F. Supp. 2d 954 (D. Minn. 2000)....................................................... 11

*Veal v. First Am. Bank*,
  914 F.2d 909 (7th Cir. 1990) .................................................................... 11

*Vulcan Materials Co., Inc. v. Driltech, Inc.*,
  306 S.E.2d 253 (Ga. 1983) ....................................................................... 28

*Watts v. Medicis Pharm. Corp.*,
  365 P.3d 944 (Ariz. 2016) ................................................................... 22, 23

*Waugh v. Bishop & Buddha, LLC*,
  No. 24-CV-019-SE, 2025 WL 919895 (D.N.H. Mar. 26, 2025) ............... 11

*Wertz v. Clorox Services Co.*,
  No. 1:24-CV-01917-RMR-SBP, 2025 WL 684107 (D. Colo. Feb. 11, 2025),
  *report and recommendation adopted*, No. 1:24-CV-01917-RMR-SBP, 2025 WL 615178
  (D. Colo. Feb. 26, 2025) ........................................................................... 12

*Westfield Ins. Co. v. Birkey's Farm Store, Inc.*,
  924 N.E.2d 1231 (Ill. App. 2010)............................................................. 28

*Williams v. Thor Motor Coach, Inc.*,
  3:24-CV-364-JTM-JEM, 2024 WL 4524292 (N.D. Ind. Oct. 17, 2024).... 11

*Williams v. Yamaha Motor Co. Ltd.*,
  851 F.3d 1015 (9th Cir. 2017) .................................................................. 21

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013) .................................................................... 19

*Woodruff v. Ind. Family & Soc. Servs. Admin.*,
  964 N.E.2d 784 (Ind. 2012)...................................................................... 30

**Statutes**

815 Ill. Comp. Stat. Ann. 505/2 .................................................................... 13

Ariz. Rev. Stat. § 44-1522 ........................................................................ 22

Fla. Stat. Ann. § 501 ............................................................................... 25

Minn. Stat. § 325 ..................................................................................... 13

N.H. Rev. Stat. § 358-A:2 ............................................................. 13, 14, 16

**Other Authorities**

Cal. Bus. & Prof. Code § 17500 ................................................................ 13

Ind. Code Ann. § 24-5-0.5-2 ..................................................................... 13

Ind. Code Ann. § 24-5-0.5-3 ..................................................................... 18

Ind. Code Ann. § 24-5-0.5-4 ..................................................................... 13

Ind. Code Ann. § 24-5-0.5-5 ................................................................ 19, 20

Ohio Rev. Code Ann. § 1345 ..................................................................... 26

**Rules**

Fed. R. Civ. P. 9 ......................................................................... 1, 4, 11, 12

Fed. R. Civ. P. 12 ....................................................................................... 4

## I.    Introduction

In this putative class action, Plaintiffs Matthew Auble, Joseph Alterman, Don Bilyeu, Leo Critchfield, Michael Croteau, Lucy and Andrew Hallberg, Michael O'Neal, Daniel Peabody, Gary Pfeiffer, Collin Reese, Jim Rieber, Matthew Thompson, and Gustav Vanzyl bring statutory consumer-protection claims and common-law claims for negligence and unjust enrichment against Defendants Winnebago Industries, Inc. ("Winnebago") and Grand Design RV, LLC ("Grand Design"). Plaintiffs' claims are based on the contention that four recreational vehicle models manufactured by Grand Design have a design flaw referred to as "excessive frame flex." Plaintiffs' claims fail for multiple reasons.

As a threshold matter, Plaintiffs fail to plead facts that would subject Winnebago to personal jurisdiction in Indiana when it is nothing more than a corporate parent of Grand Design and had no role in the manufacture of the RVs at issue anywhere—let alone in Indiana. Winnebago should be dismissed. Next, Plaintiffs' proposed nationwide class claims on behalf of the absent class under Minnesota or Indiana law would violate due process because no Plaintiffs have any connection to either state.

On the merits, even viewing the allegations in the light most favorable to Plaintiffs, their assertions amount to nothing more than garden-variety warranty claims, which they try, and fail, to dress up as statutory fraud claims. Across the board, Plaintiffs fail to allege the type of unfair or deceptive practice that could sustain many of their statutory causes of action, and certainly have not done so with particularity as Federal Rule of Civil Procedure 9(b) requires.

Plaintiffs' negligence claims fail by operation of the economic loss doctrine. They claim solely economic loss—*e.g.*, diminution in value—due to the alleged "frame defect" and thus cannot recover in tort against Defendants. Plaintiffs' unjust enrichment claims also fail for the California, Florida, Georgia, Indiana, and Ohio sub-classes. California does not recognize a

1

standalone claim for unjust enrichment. Florida and Ohio require a direct transaction between the buyer and seller, but the Florida and Ohio Plaintiffs did not buy their RVs directly from the Defendants. And Indiana and Georgia recognize unjust enrichment claims only for *quantum meruit—i.e.*, where a plaintiff performs a service and is not compensated. For these reasons, and as explained below, Defendants' motion to dismiss should be granted.

## II.  Facts Alleged

Grand Design is an Indiana company that makes recreational vehicles. (Am. Compl., ECF No. 21, ¶¶23, 59.) It is a subsidiary of Winnebago, a Minnesota company. (*Id.* ¶¶22, 29.) Plaintiffs, who reside in ten states, allege that they each purchased an RV manufactured by Grand Design between 2020 and 2023. (*Id.* ¶¶213, 220, 232, 242, 251, 258, 271, 281, 290, 298, 307, 315, 322.) They claim that their RVs experienced excessive frame flex, which "occurs when an RV's frame— which is designed to flex and absorb the stress of traveling on the road—flexes beyond its specified parameters." (*Id.* ¶108.)

Plaintiffs allege that Grand Design made several representations about the quality of its RVs, including: (1) posting on social media that touring the country in an RV is "extremely attractive" and "RVs require less maintenance than campervans"; (2) stating on its website that its RVs were "The Cure for Full-Time Living" and offered "Full Time Living: With You for the Long Haul"; (3) representing in brochures that it constructed its RVs with a focus on quality, customer experience, vigorous inspections, attention to detail, and convenience; (4) representing on its website that it addresses "issues" with its RVs and "take[s] care of" customers after the sale; (5) promising in social media advertisements "more attention to detail, more experienced Craftsmen, more rigorous inspections, [and] more focus on the customer"; and (6) representing that an RV is like a "house on wheels" that may go through "earthquake and hurricane type conditions," which Grand Design takes into consideration. (*Id.* ¶¶75–89.)

Plaintiffs further allege that, since 2020, Grand Design has been on notice that its RVs were experiencing high rates of excessive frame flex through customer complaints on social media, reported to the company, or reported to NHTSA. (*Id.* ¶161.) Plaintiffs admit that Defendants acknowledged customer complaints of alleged excessive frame flex in a public earnings call and online. (*Id.* ¶¶174–79.) Nonetheless, Plaintiffs contend that Defendants attempted a "cover-up." (*Id.* ¶186.) They claim that Grand Design "censors" consumer complaints by removing negative comments from the social media forums it manages, and by entering into non-disclosure agreements with certain customers that require removal of negative social media posts. (*Id.* ¶¶188–93.) Plaintiffs also fault Grand Design for issuing a "technical service bulletin" to service technicians addressing the alleged excessive frame flex, rather than issuing a recall. (*Id.* ¶¶201–202.) Plaintiffs contend that they and the putative class members have been harmed because their RVs have been damaged by excessive frame flex, some have lost the use of their RVs while waiting for repairs to begin or be completed, some have had to pay for repairs not covered by warranty, and the resale value of their RVs has purportedly diminished. (*See id.* ¶¶219, 229–30, 240–41, 250, 257, 270, 279–80, 289, 297, 304, 314, 321, 327.)

Plaintiffs have sued not just the manufacturer, Grand Design, but also its corporate parent, Winnebago. Plaintiffs allege that "Winnebago exercised complete control over Grand Design's decision-making and operations." (*Id.* ¶¶29.) They also contend that Winnebago and Grand Design "function as a single company" because they allegedly share some officers and employees, they are joint beneficiaries of some loan agreements, Winnebago funds the retirement and 401(k) plans of Grand Design's employees, and a recent Winnebago earnings presentation did not distinguish between Grand Design's operations, growth, and sales and Winnebago's. (*Id.* ¶¶30–39.) Plaintiffs

bring claims under the consumer-fraud statutes of several states, as well as common-law claims for negligence and unjust enrichment.

### III.    Legal Framework

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Similarly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### IV.    Argument

Plaintiffs' Amended Complaint is deficient in numerous respects. To start, Plaintiffs have not pleaded any facts that would give rise to personal jurisdiction over Winnebago, and it would violate due process to apply Indiana or Minnesota law to the entirety of the nationwide class. Plaintiffs' claims also fail on the merits. First, Plaintiffs fail to plead their consumer-fraud claims with particularity, as required by Rule 9(b). Plaintiffs also fail to state a claim under almost every one of the state consumer-fraud statutes they cite—either because they fail to allege a violation of the statute, the applicable statute of limitations bars the claim, or they fail to allege some other

required element under the statute. Additionally, Plaintiffs' negligence claims are doomed by the economic-loss rule, and their unjust enrichment claims fail in California, Florida, Georgia, Indiana and Ohio because the cause of action is either not recognized, requires conferral of a direct benefit that is not present, or does not fit the pleaded facts. Accordingly, Plaintiffs' claims should be dismissed as explained in detail below.

**A. Plaintiffs fail to establish personal jurisdiction over Winnebago.**

Federal courts in Indiana can exercise personal jurisdiction over an out-of-state defendant, like Winnebago, only when the out-of-state defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted). As the Supreme Court has long explained, personal jurisdiction may be either general or specific. *See id.* Plaintiffs unsuccessfully attempt to invoke both here.

**1. Winnebago is not subject to general personal jurisdiction in Indiana.**

In all but the most extraordinary cases, a corporation is subject to general jurisdiction only in its place of incorporation and principal place of business. *See Daimler Ag. v. Bauman*, 571 U.S. 117, 139 (2014). Here, Minnesota is Winnebago's alleged principal place of business and place of incorporation, so the usual grounds for general personal jurisdiction do not apply. (Am. Compl. ¶22.)

That leaves only the extraordinary case where a corporation's operation in another forum "may be so substantial and of such a nature to render the corporation at home in that state." *Daimler*, 571 U.S. at 139 n.19. This exception does not warrant "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Id.* at 138. As the Supreme Court has explained: "Such exorbitant exercises of all-

purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 139 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Instead, a corporation is "at home" only where its business activities in a state make it "comparable to a domestic enterprise in that State." *Id.* at 133 n.11.

The "exceptional case" standard comes from *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). There, the defendant Benguet was formed in the Philippines, but temporarily moved its office, files, and business activities to Ohio during World War II. *Id.* at 447–48. The Supreme Court held that Ohio had general personal jurisdiction over the corporation because Ohio was its "principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n.11 (1984). In contrast, a railroad company was not "at home" in Montana even though it had "over 2,000 miles of railroad track and more than 2,000 employees" there because Montana was one of several states where the company did business, and "a corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (cleaned up).

Plaintiffs here allege that "Winnebago has contacts with the State of Indiana that are so continuous and systematic that it is essentially at home in this State" and that it has "submitted to the jurisdiction of the courts of Indiana by doing and soliciting business in Indiana, providing products and/or services by or to persons in Indiana, and deriving substantial revenue from goods sold in Indiana." (Am. Compl. ¶¶26, 28.)  Specifically, Plaintiffs allege that Winnebago's website lists employment positions in Indiana, that its website provides an Indiana mailing address, that its LinkedIn page says it has facilities in Indiana, and that there are Winnebago dealerships in Indiana. (*Id.* ¶¶37, 40–42.)

6

However, this online information is not specific to Winnebago Industries, Inc. For example, the Indiana mailing address is for "Winnebago of Indiana, LLC," a separate business entity,[3] the LinkedIn page relates to Winnebago's "family of brands" that includes subsidiaries like Grand Design,[4] and the listed dealerships are independent businesses and not agents or representatives of Winnebago Industries.[5] Moreover, the online information fails to establish that Indiana is anything more than just one state where Winnebago operates. The Amended Complaint does not mention how many employees or facilities Winnebago has in other states, or how many independent Winnebago dealerships are in other states. Indeed, the LinkedIn page Plaintiffs cite says Winnebago has "multiple facilities in Iowa, Indiana, Minnesota and Florida,"[6] and Winnebago's website lists dealerships in nearly every state.[7]

In short, these allegations are insufficient to establish that Winnebago's business activities are so substantial that Winnebago is "at home" in Indiana. *See Evans v. Wright Med. Tech., Inc.*, No. 319CV00160DRLMGG, 2019 WL 5390548, at *7 (N.D. Ind. Oct. 21, 2019) (concluding that statements made on a corporate website did not establish general jurisdiction because it showed that the corporation had facilities in numerous states, and the website related to multiple affiliated

---

[3] Winnebago, *Contact Us: Winnebago Towables*, https://www.winnebago.com/contact-us (cited in Am. Compl. ¶41 n.11).

[4] LinkedIn, *Winnebago Industries*, https://www.linkedin.com/company/winnebago-industries/about/ (cited in Am. Compl. ¶42 n.12).

[5] Winnebago, *Dealer Directory*, https://www.winnebago.com/shopping-tools/dealer-directory/us/indiana?selectedState=Indiana&vehicleType=Motorhomes&Group=81&Motorhomes=True&Towables=False (cited in Am. Compl. ¶42 n.13).

[6] LinkedIn, *Winnebago Industries*, https://www.linkedin.com/company/winnebago-industries/about/ (cited in Am. Compl. ¶42 n.12).

[7] Winnebago, *Dealer Directory*, https://www.winnebago.com/shopping-tools/dealer-directory/us/indiana?selectedState=Indiana&vehicleType=Motorhomes&Group=81&Motorhomes=True&Towables=False (cited in Am. Compl. ¶42 n.13).

entities). Thus, Winnebago is not subject to general jurisdiction in Indiana.[8]

### 2. Winnebago is not subject to specific personal jurisdiction in Indiana in this case.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 352 (2021). "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum state." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017) (quoting *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). Because of this, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 262 (quotation marks omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id.* at 264 (citing *Goodyear*, 546 U.S. at 931 n.6).

Establishing specific personal jurisdiction requires a showing that the defendant undertook "some act by which it purposefully avails itself of . . . the forum State," and the claims "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 592 U.S. at 359 (cleaned up). It is a two-part test. Plaintiffs "must demonstrate that [their] claims arise out of [Winnebago's] contacts with [Indiana] and that those contacts are constitutionally sufficient." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021). They have not done so here.

Plaintiffs' primary basis for specific personal jurisdiction appears to be that Winnebago and Grand Design "function as a single company, financially integrated with shared executives."

---

[8] In fact, no court has **ever** determined that Winnebago is subject to general personal jurisdiction in Indiana, post-*Goodyear*.

(Am. Compl. ¶39.) This theory is based upon conclusory or innocuous allegations: (1) "Winnebago exercised complete control over Grand Design's decision-making and operations"; (2) "upper-level personnel have rotated between important positions at both Winnebago and Grand Design"; (3) Winnebago and Grand Design are joint beneficiaries of loan agreements; (4) Grand Design employees' retirement accounts are funded by Winnebago; (5) a Winnebago earnings presentation represented Grand Design's earnings and growth as its own; and (6) Winnebago's website directs consumers to purchase Grand Design RVs. (*Id.* ¶¶29–39.)

None of these allegations are sufficient to impute Grand Design's connections to Indiana as a subsidiary, to Winnebago as the parent. *Purdue Res. Found.*, 338 F.3d at 778 n.17 (applying "general rule" that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent"). Subjecting Winnebago to jurisdiction in Indiana because of Grand Design's contacts would require a showing that Winnebago exerts an "unusually high degree of control" over Grand Design, such that its corporate existence "is simply a formality." *Id.* Plaintiffs' allegations merely suggest a standard parent-subsidiary relationship, and not that Grand Design's corporate existence is a "mere formality." So, the general rule—that "each defendant's contacts with the forum State must be assessed individually"—applies here. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Nor do Plaintiffs allege facts establishing any suit-related conduct that could give rise to specific personal jurisdiction in this case. Accordingly, Winnebago should be dismissed for lack of personal jurisdiction.

   **B.  Plaintiffs' attempt to assert claims under Indiana and Minnesota law on behalf of absent class members violates due process.**

Plaintiffs bring claims on behalf of the putative nationwide class under the Indiana Deceptive Consumer Sales Act ("IDCSA"), the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), and the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), as well as

nationwide class claims for negligence and unjust enrichment claims under Indiana common law. However, given Indiana and Minnesota's lack of connection to the absent class members, it would violate Defendants' due process rights to prosecute such claims on behalf of a nationwide class.

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court held that it would violate due process to apply Kansas legal standards to the contract claims of all members of a putative nationwide class when most class members had no independent connection to the state. Even though Kansas, by virtue of defendant's ownership of property and conduct of business in that state, had contacts with the litigation, the Court concluded that Kansas lacked a "significant contact or aggregation of contacts to the claims asserted by each member of the plaintiff class," and that substantive conflicts existed between Kansas and other plaintiff jurisdictions such that the "application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits" imposed by the Due Process Clause *Id.* at 819–20. The Court also emphasized that, when considering the fairness of imposing a single state's law to a nationwide class action, "an important element is the expectation of the parties," and noted that there was no indication in the record that "the parties had any idea that Kansas law would control." *Id.*

Here, as in *Shutts*, it would violate due process to apply Indiana or Minnesota law to each of the absent nationwide class members' claims when there are substantive conflicts of law between potentially interested states. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."). It is also likely that the vast majority of the proposed class has no expectation that Indiana or Minnesota law would apply to whatever claims they may have. *See Shutts*, 472 U.S. at 822. Under similar circumstances, other federal courts have found that it would violate the Due Process Clause to

apply a single state's law to nationwide warranty claims on behalf of a class. *See, e.g.*, *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369−71 (E.D. La. 1997). In *Bronco II*, the named plaintiffs argued that Michigan law should govern warranty claims for the entire proposed nationwide class because the defendant was based in Michigan and made designs for the vehicle there. *Id.* at 370−71. Applying *Schutts*, the court rejected this argument and held that the universal application of Michigan law would violate due process. *Id.* For the same reasons, Plaintiffs' proposed nationwide class claims under Minnesota and Indiana law should be dismissed.

### C.  Plaintiffs fail to plead their consumer-fraud claims with particularity.

Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The primary purpose of the rule is to give the defendant 'fair notice' of the allegations against it." *Thornton v. CMB Entm't, LLC*, 309 F.R.D. 465, 468 (S.D. Ind. 2015). Notice of the precise conduct at issue is necessary "to enable preparation of defense." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). "This means as a practical matter that [a plaintiff] must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). "Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal." *Veal v. First Am. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).

Here, Plaintiffs' statutory claims all sound in fraud, and are therefore subject to the pleading requirements of Rule 9(b).[9] But Plaintiffs fail to identify any specific misrepresentations

---

[9] *See Williams v. Thor Motor Coach, Inc.*, No. 3:24-CV-364-JTM-JEM, 2024 WL 4524292, at *2 (N.D. Ind. Oct. 17, 2024) (IDCSA); *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (MPCFA); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 930 (D. Minn. 2024) (MDTPA); *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (ACFA); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (CFAL and CUCL); *In re Horizon Organic Milk Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1323

or deceptive acts giving rise to each claim. Instead, Plaintiffs recite conclusory allegations to the effect that Defendants "willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs." (Am. Compl. ¶¶383, 404, 424, 472, 520, 542, 562, 581.) These are precisely the types of allegations that fail under Rule 9(b). *Benson*, 944 F.3d at 646. Accordingly, all Plaintiffs' statutory consumer-fraud claims should be dismissed.

### D. Plaintiffs also fail to state individual claims under the consumer-fraud statutes.

Plaintiffs bring claims under thirteen state consumer-fraud statutes. In addition to Plaintiffs' failure to meet Rule 9(b) pleading requirements, twelve of these claims fail for additional reasons. First, Plaintiffs fail to allege deceptive acts under the MPCFA, MDTPA, IDCSA, California False Advertising Law ("CFAL"), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the New Hampshire Consumer Protection Act ("NHCPA"). Second, they fail to allege knowledge or intent to deceive under the Colorado Consumer Protection Act ("CCPA"), Georgia Fair Business Practices Act ("GFBPA"), and NHCPA. Third, Plaintiffs fail to allege any deceptive act in connection with the sale of an RV under the Arizona Consumer Fraud Act ("ACFA"). Fourth, Plaintiffs fail to allege that they have inadequate remedies under the California Unfair Competition Law ("CUCL"). Fifth, Plaintiffs' claim under the Ohio Consumer Sales Practices Act ("OCSPA") is barred by the statute of limitations. Finally, Plaintiff Peabody lacks standing to sue under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

---

n.8 (S.D. Fla. 2013) (noting disagreement as to whether Rule 9(b) applies to FDUTPA); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (ICFA); *Waugh v. Bishop & Buddha, LLC*, No. 24-CV-019-SE, 2025 WL 919895, at *3 (D.N.H. Mar. 26, 2025) (NHCPA); *Ferron v. Metareward, Inc.*, 698 F. Supp. 2d 992, 1000 (S.D. Ohio 2010) (noting disagreement as to whether Rule 9(b) applies to OCSPA); *Wertz v. Clorox Services Co.*, No. 1:24-CV-01917-RMR-SBP, 2025 WL 684107, at *3 (D. Colo. Feb. 11, 2025), *report and recommendation adopted*, No. 1:24-CV-01917-RMR-SBP, 2025 WL 615178 (D. Colo. Feb. 26, 2025) (CCPA); *Nalley v. Gen. Motors LLC*, No. 1:21-CV-04174-WMR, 2022 WL 18459646, at *7 (N.D. Ga. Aug. 30, 2022) (GFBPA); *Ivie v. Mission Rock Residential LLC*, No. 3:21-CV-01122-SB, 2022 WL 2612215, at *10–12 (D. Or. May 27, 2022) (noting disagreement as to whether Rule 9(b) applies to OUTPA).

1. **Plaintiffs fail to allege violations of the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA.**

For the Minnesota, California, Illinois, Indiana, and New Hampshire consumer-fraud statutes, Plaintiffs must allege that Defendants committed a deceptive act.[10] Under Minnesota, California, and Illinois law,[11] a defendant commits a deceptive act by making an affirmative misrepresentation or, in limited circumstances, by concealing or not disclosing facts. *See Graphic Comms. Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014) (MPCFA); *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) (MDTPA); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (CFAL); 815 Ill. Comp. Stat. Ann. 505/2 (ICFA).

Under the Indiana statute, a deceptive act may be either an "incurable" deceptive act, or an "uncured" deceptive act. Ind. Code Ann. § 24-5-0.5-4. An incurable deceptive act is "part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code Ann. § 24-5-0.5-2(a)(8). Similar to a deceptive act under the MPCDA, MSTPA, CFAL, and ICFA, an incurable deceptive act under the IDCSA can be an affirmative misrepresentation or, in some circumstances, a nondisclosure. *State v. TikTok Inc.*, 245 N.E.3d 681, 696 (Ind. Ct. App. 2024). In contrast, a

---

[10] Minn. Stat. § 325F.69, subd. 1 (MPCFA); Minn. Stat. § 325D.44 (MDTPA); Cal. Bus. & Prof. Code § 17500 (CFAL); 815 Ill. Comp. Stat. Ann. 505/2 (ICFA); N.H. Rev. Stat. § 358-A:2 (NHCPA); Ind. Code Ann. § 24-5-0.5-4 (IDCSA).

[11] An ICFA violation may also be premised on an "unfair practice." To qualify as an unfair practice, a defendant's conduct must "violate public policy, be so oppressive that it leaves the consumer with little alternative except to submit to it, and injure the consumer." *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 64 (Ill. App. 2006). "A business practice violates public policy if it offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness." *City of Chicago v. Equte LLC*, 693 F. Supp. 3d 879, 899 (N.D. Ill. 2023) (cleaned up). Although Plaintiffs refer to "unfair and deceptive business practices," they do not allege that Defendants' conduct violated public policy.

defendant commits an uncured deceptive act if the damaged consumer gives notice and the defendant fails to cure within a reasonable time. Ind. Code Ann. § 24-5-0.5-2(a)(7).

New Hampshire takes a different approach by enumerating a list of deceptive acts and also permitting claims for other acts that "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *See ACAS Acquisitions (Precitech) Inc. v. Hobert*, 923 A.2d 1076, 1094 (N.H. 2007). Here, Plaintiffs accuse Defendants of three specifically prohibited acts: (1) representing that goods have characteristics they do not have, (2) representing that goods are of a particular quality that they are not, and (3) advertising goods with intent not to sell them as advertised. N.H. Rev. Stat. § 358-A:2(V), (VII), (IX).

Applying this framework, Plaintiffs have failed to plausibly allege deceptive acts under any of the statutes. They have not alleged any actionable misrepresentation or omission under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, or the incurable-deceptive-act prong of the IDCSA. Nor have Plaintiffs alleged proper notice and a reasonable opportunity to cure as required by the uncured-deceptive-act prong of the IDCSA. Accordingly, these claims should all be dismissed.

### i. Plaintiffs fail to allege an actionable affirmative misrepresentation.

An affirmative misrepresentation qualifies as a deceptive act under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and the incurable-deceptive-act prong of the IDCSA, only if it is capable of deceiving a reasonable consumer.[12] Thus, mere "puffery" like "exaggerated blustering or boasting and vague, subjective statements of superiority" does not qualify as an actionable

---

[12] *Song*, 2020 WL 7624861, at *3 (MDTPA, MPCFA); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1137–38 (S.D. Cal. 2021) (CFAL); *Kampmann v. Procter & Gamble Co.*, 699 F. Supp. 3d 678, 688–89 (C.D. Ill. 2023) (ICFA); *TikTok Inc.*, 245 N.E.3d at 696 (IDCSA); *Guay v. Sig Sauer, Inc.*, 626 F. Supp. 3d 536, 545 (D.N.H. 2022) (deceptive statement because it could mislead a reasonable consumer, NHCPA).

misrepresentation.[13] For example, in *Castagna*, the plaintiff alleged that an RV sales manager falsely stated that the manufacturer "had an extremely high quality product," that "they stood behind the product," and that their service was "a step above." 340 F. Supp. 3d at 741. The court concluded that these statements were "too general to constitute actionable misrepresentations" under the IDCSA and instead represented mere "puffing" and "'meaningless sales patter'" *Id.* (quoting *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013)).

Here, Plaintiffs allege that Grand Design made similarly generic representations about the quality of its RVs, including that: (1) touring in an RV is "extremely attractive" and "RVs require less maintenance than campervans"; (2) its RVs are "The Cure for Full-Time Living" and offer "Full Time Living: With You for the Long Haul"; (3) it constructs its RVs with a focus on quality, customer experience, vigorous inspections, attention to detail, and convenience; (4) it addresses "issues" with its RVs and "take[s] care of" customers after the sale; (5) it offers "more attention to detail, more experienced Craftsmen, more rigorous inspections, [and] more focus on the customer"; (6) an RV is like a "house on wheels" that may go through "earthquake and hurricane type conditions" and Grand Design takes this into consideration. (Am. Compl. ¶¶75–89.)

As in *Castagna*, these alleged statements are too general for any reasonable consumer to rely on them. Instead, they represent precisely the kind of "boasting and vague, subjective statements of superiority" that are considered "puffery" and do not qualify as actionable misrepresentations. *Bernstein*, 607 F. Supp. 2d at 1031. Accordingly, Plaintiffs fail to allege any

---

[13] *Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1031 (D. Minn. 2009) (MPCFA); *accord LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1489 (D. Minn. 1996) (MDTPA)*; Stewart*, 537 F. Supp. 3d at 1137–38 (CFAL); *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997) (ICFA); *Private Jet Servs. Grp., Inc. v. Sky King, Inc.*, CIV. 05-CV-98-JD, 2006 WL 2864057, at *5 (D.N.H. Oct. 4, 2006) (NHCPA); *Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 741 (N.D. Ind. 2018) (IDCSA).

actionable misrepresentation under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and the incurable-deceptive-act prong of the IDCSA.

ii.    **Plaintiffs fail to allege actionable concealment or nondisclosure.**

Additionally, Plaintiffs' statutory claims cannot rest on the theory that Defendants concealed or failed to disclose the purported excessive frame flex, as Plaintiffs failed to allege the requisite facts to make the purported concealment or nondisclosure actionable under the MPCFA, MDTPA, CFAL, ICFA, and IDCSA. Further, no omission could give rise to a claim under sections V, VII, and IX of the NHCPA. N.H. Rev. Stat. § 358-A:2(V), (VII), (IX) (requiring affirmative representations).

Under the MPCFA and MDTPA, concealment and nondisclosure are actionable only if the undisclosed fact was material and the defendant had a duty to disclose it. *Graphic Comm's*, 850 N.W.2d at 695 (MPCFA); *see Song*, 2020 WL 7624861, at *11 n.15 (MDTPA); *Hammerschmidt v. Gen. Motors LLC*, 583 F. Supp. 3d 1215, 1221 (D. Minn. 2022). A duty to disclose may arise if the defendant has a confidential or fiduciary duty to the plaintiff or if the omission renders a representation deceptive or misleading. *Graphic Comm's*, 850 N.W.2d at 695. A duty may also arise where the defendant has "special knowledge" of material facts that the other party does not have access to, but that theory has been applied only in one case, where "a bank that had actual knowledge that one of its depositors was irretrievably insolvent and thus engaging in fraud by entering into a contract with the plaintiff had a duty to disclose the depositor's insolvency to the plaintiff." *Id.* Courts have declined to expand the theory beyond those narrow circumstances. *See Song*, 27 F.4th at 1346; *RSS Fridley, LLC v. Nw. Orthopaedic Surgeons P'ship, LLP*, No. A21-0664, 2022 WL 200359, at *8 (Minn. Ct. App. Jan. 24, 2022).

Here, Plaintiffs allege no facts to suggest that the Defendants had a duty to disclose the purported excessive frame flex. They do not allege that the Defendants had a confidential or fiduciary duty to them. Nor do they claim that the alleged nondisclosure rendered any of the Defendants' affirmative statements misleading. The only affirmative representations the Complaint alleges are the vague and generic examples of "puffery' discussed above, which are incapable of deceiving a reasonable consumer as a matter of law. Nor do Plaintiffs allege that Defendants had actual knowledge that a third party was attempting to defraud them. Thus, the Complaint does not allege that Defendants had a duty to disclose under the MPCFA or MDTPA.

Under the CFAL, "to be actionable [an] omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Cal. App. 2006)). "[A] plaintiff sufficiently pleads a duty to disclose where: (1) the plaintiff alleges the omission was material; (2) the alleged defect was central to the product's function; and (3) the defendant (a) is plaintiff's fiduciary, (b) has 'exclusive knowledge' of material facts, (c) 'actively conceals' a material fact, or (d) makes misleading partial representations." *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 863 (N.D. Cal. 2024) (quoting *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1008 (N.D. Cal. 2023)).

Here, the Complaint does not allege that Defendants' purported failure to disclose was contrary to a representation they actually made, or that Defendants had a duty to disclose. Plaintiffs do not allege facts establishing that Defendants are Plaintiffs' fiduciaries, or that Defendants had exclusive knowledge of the purported excessive frame flex. To the contrary, the Complaint alleges that customers have complained about excessive frame flex on social media and to the NHTSA. (Am. Compl. ¶161.) And, although Plaintiffs allege that Defendants attempted to conceal

17

excessive frame flex by suppressing customer complaints online (Am. Compl. ¶¶187–93), the Complaint itself cites social media groups, online forums, and YouTube channels discussing this very topic (Am. Compl. ¶¶161–66.) These allegations show that nothing Defendants purportedly did could have kept Plaintiffs from learning about the alleged excessive frame flex online. Finally, the Complaint alleges no misleading partial representation, only the generic "puffery" discussed earlier, which cannot mislead a reasonable consumer.

Under the ICFA, "it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996). However, "an 'omission' is an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, No. 13-CV-03594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) (citing *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009)). For example, a plaintiff failed to allege an actionable omission under the ICFA where she alleged that a shoe company failed to disclose the safety risks of its light-up shoes in advertisements that described the light-up feature. *Guajardo v. Skechers USA, Inc.*, No. 419CV04104SLDJEH, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021). The court explained that the advertisements did not contain material omissions, but "only opportunities or locations where Skechers could have disclosed the alleged defect." *Id.* (cleaned up). In other words, an omission is actionable under the ICFA only if it renders a specific communication misleading. *See Ko v. Univ. of Potomac at Chicago LLC*, No. 24 C 1455, 2024 WL 3694489, at *5 (N.D. Ill. Aug. 7, 2024) (collecting cases dismissing ICFA claims where the plaintiff failed to identify a direct statement with a material omission). Here, again, Plaintiffs have not identified any communication that was rendered misleading by an omission—only generic puffery that could have included disclosures about the alleged frame flex. Thus, they have not alleged a claim under the ICFA.

Finally, the IDCSA prohibits only omissions that are "unfair, abusive, or deceptive." Ind. Code Ann. § 24-5-0.5-3(a). "The IDCSA isn't a blanket prohibition on non-disclosure of information; the non-disclosure must be unfair in some sense." *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2016 WL 6610835, at *5 (N.D. Ind. Nov. 8, 2016). Plaintiffs have identified nothing unfair, abusive, or deceptive about the purported omissions. Accordingly, Plaintiffs have failed to allege any nondisclosure or concealment amounting to an incurable deceptive act.

### iii. Plaintiffs fail to allege notice or an uncured deceptive act under the IDCSA.

Plaintiffs cannot bring an IDCSA action based on an uncured deceptive act because they failed to provide proper notice or a reasonable opportunity to cure. To bring a claim based on an uncured deceptive act, a plaintiff must "have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction." Ind. Code Ann. § 24-5-0.5-5(a). The notice must "state fully the nature of the alleged deceptive act and the actual damage suffered therefrom." *Id.* "The notice requirement of the act gives the supplier a reasonable opportunity to remedy the consequences of an alleged deceptive act about which the consumer complains. To fulfill this purpose, 'a literal application of the notice provisions' is required." *Lehman v. Shroyer*, 721 N.E.2d 365, 368–69 (Ind. Ct. App. 1999) (internal citation omitted).

Here, Plaintiffs claim to have sent Defendants a notice letter on March 17, 2025.[14] (Am. Compl. ¶367.) The letter demanded that Defendants immediately recall all 2020−2023 model year Grand Design RVs and reimburse the purchase price for all current and former owners of

---

[14] The letter was actually dated March 18, 2025. (Ex. A.) The Court may consider the letter with the motion to dismiss because it is central to the complaint and referenced within it. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

2020−2023 model year Grand Design RVs. (*See* Ex. A at 1–2.) Plaintiffs' counsel warned that "unless Grand Design and Winnebago take such action[s] . . . within thirty (30) days after receipt" of the letter, they would bring suit under the IDCSA. (*Id.*) Two days later, Plaintiffs filed suit. It is unreasonable and contrary to the intent of the IDCSA to send a notice letter and sue within two days.

Even if the two-day notice period were somehow sufficient, Plaintiffs are barred from seeking relief under the IDCSA for an uncured deceptive act because the Complaint alleges that each of the named Plaintiffs purchased their RV more than one year before March 17, 2025. (Am. Compl. ¶¶213, 220, 232, 242, 251, 258, 271, 281, 290, 298, 307, 315, 322.) As a result, their notice is not timely. Nor does the letter attempt to "state fully" the actual damages incurred due to the alleged deceptive act. (*See* Ex. A at 1–2.) Instead, it simply demands that Defendants recall all 2020−2023 model year Grand Design RVs and reimburse customers. (*Id.*) Because this notice letter does not comply with Ind. Code Ann. § 24-5-0.5-5(a), Plaintiffs cannot bring an IDCSA claim for alleged uncured deceptive acts.

### 2. Plaintiffs' CCPA, GFBPA, and NHCPA claims must be dismissed because the Amended Complaint does not allege pre-sale knowledge of the alleged excessive frame flex.

To make out a violation of the Colorado, Georgia, and New Hampshire consumer-fraud statutes, Plaintiffs must allege that Defendants' purportedly deceptive conduct was knowing or intentional. *See Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *Paulk v. Thomasville Ford Lincoln Mercury*, 732 S.E.2d 297, 301 (Ga. App. 2012) ("[A] claim under the Fair Business Practices Act . . . requires a showing that a defendant committed a volitional act constituting an unfair or deceptive act or practice conjoined with culpable knowledge of the nature (but not necessarily the illegality) of the act." (cleaned up)); *Manning v. Ashcar, Inc.*, No. 1:19-

CV-04309-SDG, 2021 WL 9596193, at *4 (N.D. Ga. Jan. 22, 2021) ("Georgia law clearly states that mere negligence is not an element of an FBPA claim." (cleaned up)); *Kelton v. Hollis Ranch, LLC*, 927 A.2d 1243, 1246 (N.H. 2007) (the NHCPA requires "a degree of knowledge or intent").

"States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). Thus, to plausibly allege knowledge or intent a plaintiff must make factual allegations from which knowledge or intent can be inferred. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 753 (7th Cir. 2021). Generally, customer complaints are not sufficient to demonstrate a manufacturer's presale knowledge of an alleged defect "without some indicia of how those complaints represent an 'unusually high' amount." *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1168 (C.D. Cal. 2022) (quoting *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1026 (9th Cir. 2017)). Further, to support an inference that a manufacturer knew about a defect at the time of sale, the customer complaints must predate the sale. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1027 (9th Cir. 2017).

Here, Plaintiffs have not alleged any facts from which it can be plausibly inferred that Defendants knew about the purported excessive frame flex at the time Plaintiffs purchased their RVs. The Amended Complaint alleges that NHTSA recorded a "spike" in complaints about Grand Design RVs—from less than 10 complaints in 2019 to a height of 25 to 30 complaints in 2021. (Am. Compl. ¶¶113–17.) Similarly, Plaintiffs allege that Defendants' warranty claims have increased since 2017. (Am. Compl. ¶¶168–70.) However, during the same timeframe, the Amended Complaint alleges, Defendants increased the number of RVs they manufactured and sold by as much as double. (Am. Compl. ¶¶100–105.) Thus, Plaintiffs' allegations demonstrate merely that complaints have increased as Grand Design has manufactured and sold more RVs.

21

The Amended Complaint also alleges that various social media channels discuss "issues" with Grand Design RVs, including excessive frame flex. (Am. Compl. ¶¶162–66.) However, it does not say how many complaints of excessive frame flex were made through these channels, nor does it provide dates for these complaints.

Giving Plaintiffs the benefit of every reasonable inference, these factual allegations do not demonstrate an "unusually high" number of pre-sale customer complaints. As a result, Plaintiffs have failed to plausibly allege that Defendants were aware of the purported excessive frame flex at the time Plaintiffs purchased their RVs. Plaintiffs' claims under the CCPA, GFBPA, and NHCPA must be dismissed.

### 3. Plaintiffs fail to allege any deceptive act made "in connection" with the sale of RVs under ACFA.

Plaintiff Auble brings a claim under the ACFA on behalf of himself and the Arizona subclass. The ACFA prohibits the use of "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." Ariz. Rev. Stat. § 44-1522(A).

The ACFA "does not expressly require a direct merchant-consumer transaction." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). However, it applies only to misrepresentations or omissions that are related to a transaction between the parties or contained in an advertisement related to a sale between the parties. *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 454 (Ariz. Ct. App. 2012), *vacated in part,* 232 Ariz. 344, 306 P.3d 1 (2013). For example, in *Watts*, the plaintiff sued a drug manufacturer under the ACFA for harm caused by one of its medications. *Watts*, 365 P.3d at 953. While she did not purchase the medication directly from the manufacturer, the manufacturer provided her with an informational card at the time of purchase

22

that misrepresented the potential side effects. *Id.* Thus, even though there was no privity, because the manufacturer made a misrepresentation directly to the plaintiff in connection with the transaction, she could maintain an ACFA claim. *Id.* In *Sullivan*, in contrast, plaintiffs who purchased a home from a prior owner could not maintain an ACFA claim against the original builder, who was not involved in the transaction. *Sullivan*, 290 P.3d at 454. Though the plaintiffs allegedly relied on misrepresentations on the builder's website when making their purchase, those misrepresentations were not made "in connection" with the sale and, therefore, could not support an ACFA claim. *Id.*

Applying this doctrine, the Northern District of Indiana has concluded that plaintiffs who purchased an RV from a dealer could not bring an ACFA claim against the manufacturer. *Bestwick v. Newmar Corp.*, 576 F. Supp. 3d 599, 606 (N.D. Ind. 2021), *appeal dismissed*, 2022 WL 18401473 (7th Cir. Feb. 11, 2022). Although the plaintiffs alleged that they relied on statements on the manufacturer's website, manual, advertisements, and brochures, those statements were not made in connection with the plaintiffs' purchase, and the manufacturer was not involved in the transaction in any way. *Id.* at 606–07.

Here, similarly, Plaintiff Auble alleges that he purchased his RV from a dealer in Arizona, not directly from Grand Design or Winnebago. (Am. Compl. ¶213.) He does not allege that the Defendants were involved in the sale, or that they directly provided him with any materials in connection with the transaction. Instead, he alleges merely that he viewed information on the Grand Design website, attended in-person and online factory tours, and "investigat[ed] some of Grand Design's manufacturing processes." (Am. Compl. ¶214.) As in *Sullivan* and *Bestwick*, these allegations are insufficient to establish a deceptive act that occurred in connection with his purchase. Accordingly, he cannot bring a claim under the ACFA.

### 4. Plaintiffs fail to allege that remedies at law would be inadequate under the CUCL.

To plead a valid CUCL claim, a plaintiff must plausibly allege "an inadequate remedy at law" before pursuing equitable relief in the form of restitution." *Shay v. Apple Inc.*, No. 20-cv-1629, 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). "[T]he test for equitable jurisdiction is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit." *Nguyen v. Lovesac Co.*, No. 2:24-CV-01293-TLN-JDP, 2025 WL 950511, at *7 (E.D. Cal. Mar. 28, 2025) (cleaned up).

Plaintiffs here have adequate remedies at law in the form of their limited warranties as well as the other claims they bring in this litigation, and they do not allege facts suggesting that damages would be insufficient to make them whole. (*See* Am. Compl. ¶¶445–59.) Accordingly, they have not stated a claim under the CUCL.

### 5. Plaintiffs fail to allege significant public impact, as required by the CCPA.

To maintain a claim under the CCPA, "a plaintiff must establish not only that the defendant engaged in a deceptive trade practice, but also that the defendant's challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003). To determine whether a practice has a significant public impact, courts consider: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.*

24

"Where a challenged trade practice affects only a small fraction of an entity's consumers, the impact on the public is not 'significant' for purposes of the CCPA." *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1113 (D. Colo. 2018), aff'd, 814 Fed. Appx. 408 (10th Cir. 2020) (a practice that impacted 109 insurance claims, including two in Colorado, out of 17,500 did not significantly affect the public); *see Rhino Linings*, 62 P.3d at 150 (a deceptive trade practice that affected three dealers out of 550 did not significantly affect the public). Moreover, merely alleging that an alleged deceptive advertisement or communication reached a large number of consumers is not enough. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009). Instead, a plaintiff must allege that a significant number of consumers were actually or likely will be harmed. *See Adams v. FedEx Ground Package Sys., Inc.*, 546 Fed. Appx. 772, 776 (10th Cir. 2013) (plaintiff failed to allege significant public impact where she alleged that over 3,000 people entered into an allegedly deceptive agreement, but did not indicate what percentage of those were harmed).

Here, Plaintiff Reese brings a CCPA claim on behalf of himself and a putative sub-class of Colorado consumers. (Am. Compl. ¶461.) However, the Amended Complaint does not allege that any Colorado consumers but Reese were harmed by Defendants' alleged deceptive trade practices. Nor does it allege what fraction of consumers in Colorado or nationwide were harmed by the alleged practices. As a result, the Amended Complaint fails to allege significant public impact, and the CCPA claim should be dismissed.

### 6. Plaintiff Peabody lacks standing to pursue a claim under the FDUTPA because his purchase has no connection to Florida.

Plaintiff Peabody brings a purported claim under the FDUTPA for himself and a Florida subclass. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1). Anyone "who has suffered a loss as a result of a violation" of the FDUTPA "may

recover actual damages, plus attorney's fees and court costs." Fla. Stat. Ann. § 501.211(2). But Peabody purchased his RV used, while an Arizona resident. (Am. Compl. ¶284.) The transaction had nothing to do with Florida, except that he intended to use the RV there after his purchase. (*Id.*)

When a district court determines that Florida law does not apply under choice-of-law principles, a plaintiff lacks standing to bring a class action under the FDUTPA. *See, e.g.*, *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225–26 (S.D. Fla. 2002) ("The Plaintiff herein brings his action under one Florida statute-FDUTPA. However, his individual claim is more appropriately brought under the analogous Texas deceptive trade practices act under the undisputed facts in this case. As a result, he lacks standing to bring his claim."); *ADT LLC v. Vision Sec., LLC*, No. 13-81197-CV, 2014 WL 3764152, at *7 (S.D. Fla. July 30, 2014) (dismissing FDUTPA claim where another state had most significant relationship to the parties and occurrence). Because Arizona has the most significant relationship to Plaintiff Peabody and the purchase of his RV, his claim—if any—should have been brought under the analogous Arizona statute discussed above. Plaintiff Peabody lacks standing to pursue claims under the FDUPTA.

### 7. Plaintiff O'Neal's OCSPA claim is barred by the statute of limitations.

Plaintiff O'Neal brings a claim under the OCSPA for himself and the Ohio subclass. The OCSPA prohibits "suppliers" from "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction," and provides a list of acts that qualify. Ohio Rev. Code § 1345.02(A). Critically, an OSCPA claim "may not be brought more than two years after the occurrence of the violation which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later." Ohio Rev. Code § 1345.10 (C). Where a plaintiff seeks money damages, the limitations period "begins to run when the violation occurs, not when the consumer discovers the violation." *Quetot v. M & M*

*Homes, Inc.*, No. 12 CO 1, 2013 WL 793219 at *3 (Ohio Ct. App. Feb. 25, 2013); *accord Grover v. BMW of N. Am., LLC*, 581 F. Supp. 3d 930, 945 (N.D. Ohio 2022).

Here, the Amended Complaint alleges that Defendants' purported deception induced Plaintiffs to purchase Grand Design RVs. (Am. Compl. ¶335.) And Plaintiff O'Neal alleges that he purchased his RV in 2022, more than two years before this litigation was filed. (*Id.* ¶271.) To the extent any OCSPA violation may have caused O'Neal's alleged injuries, it must have occurred outside of the limitations period, and his claim is time barred—requiring dismissal with prejudice.

### E.  Plaintiffs' negligence claims are barred by the economic loss doctrine.

Plaintiffs next attempt to assert a claim on behalf of the putative nationwide class for negligence under Indiana law. For the reasons described in Section IV.B, it would violate due process rights to apply Indiana law to the entirety of the class of RV purchasers Plaintiffs have identified. But even if such a claim were permissible, it would fail by application of the economic loss doctrine.

"Under the economic loss doctrine, contract is the sole remedy for the failure of a product or service to perform as expected." *Indiana Farm Bureau v. CNH Indus. Am., LLC*, 130 N.E.3d 604, 614 (Ind. Ct. App. 2019). By contrast, if a plaintiff suffers personal injury or damage to property other than the product itself, it is actionable under a tort theory, including general negligence. *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010). In other words, tort liability does not extend to purely economic loss caused by negligence, even if there is damage to the product itself. *Id.* at 726−27; *see also Ind. Farm Bureau*, 130 N.E.3d at 614 (confirming that the economic loss doctrine "precludes tort liability" for "pecuniary loss unaccompanied by any property damage or personal injury"). "The central theory underlying 'economic loss' is that the law should permit the parties to a transaction to allocate the risk that an item sold, or a service performed does not live up to expectations."

*Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005).

Here, Plaintiffs allege that Defendants "undertook a duty of care when they provided customers with Grand Design RVs that they advertise as safe and of high quality," that the duty included "a responsibility not to sell customers RVs that were manufactured with defective frames," and that Defendants supposedly breached that duty by "selling defective Grand Design RVs that contained a faulty frame." (Am. Compl. ¶¶592–94.) As damages, Plaintiffs claim: "Defendants' breach of their duty caused harm to Plaintiffs and members of the Classes, who unwittingly purchased defective RVs that were worth less than an RV that was free from defects" and that "these undisclosed defects caused harm to Plaintiffs' personal property and fixtures, resulted in out-of-pocket losses for plaintiffs, and caused substantial emotional distress." (*Id.* ¶595.) However, aside from this conclusory allegation, Plaintiffs allege no *facts* suggesting that the purported frame flex caused personal injury or damage to any property other than the Plaintiffs' RVs. Accordingly, the economic loss doctrine bars Plaintiffs' negligence claim. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 732.

As alternatives to the nationwide negligence claim under Indiana law, Plaintiffs assert negligence claims on behalf of their sub-classes under several other states' law. Because the economic loss doctrine applies with equal force to the circumstances alleged here in Arizona, California, Colorado, Florida, Georgia, Illinois, Minnesota, New Hampshire, and Ohio,[15]

---

[15] *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010) ("[W]hen a defect renders a product substandard or unable to perform the functions for which it was manufactured, the purchaser's remedy for disappointed commercial expectations is through contract law."); *Jimenez v. Superior Court*, 58 P.3d 450, 456 (Cal. 2002); *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) ("We hold that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 406 (Fla. 2013); *Vulcan Materials Co., Inc. v. Driltech, Inc.*, 306 S.E.2d 253, 255 (Ga. 1983); *Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 924 N.E.2d 1231,

Plaintiffs' proposed negligence claims arising under the law of those states should be dismissed with prejudice as well.

> **F.  Plaintiffs' unjust enrichment claims fail under California, Florida, Georgia, Indiana, and Ohio law.**

Lastly, Plaintiffs assert unjust enrichment claims, either on behalf of the nationwide class under Indiana law, or for themselves and their respective state sub-classes. (Am. Compl. ¶¶597–604.) However, California, Florida, Georgia, Indiana, and Ohio do not recognize a claim for unjust enrichment under the facts pleaded.

Unjust enrichment is not a standalone cause of action in California. *See Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2014). Instead, it is a "principle underlying various doctrines and remedies, including quasi-contract." *Jogani v. Superior Ct.*, 81 Cal. Rptr. 3d 503, 512 (Cal. Ct. App. 2008*); see also Melchior v. New Line Productions, Inc*. 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003). Plaintiff Critchfield and the California sub-class may not therefore sustain an action for unjust enrichment if their underlying claims are dismissed. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) (dismissing a plaintiff's unjust enrichment claim because his fraud-based claims under the CUCL, CFAL, and another statute were dismissed).

Florida and Ohio both require a plaintiff alleging unjust enrichment to plead that he has directly conferred a benefit on the defendant. *Century Senior Servs. v. Consumer Health Benefit Ass'n, Inc.*, 770 F.Supp.2d 1261, 1267 (S.D. Fla. 2011); *see also City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277–78 (11th Cir. 2015) (affirming dismissal of an unjust enrichment claim when there was "not a benefit directly conferred on the [defendant], as is required for an unjust enrichment claim under Florida law"); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio

---

1242 (Ill. App. 2010); *Jett8 Airlines, PL v. Gen. Elec. Co.*, No. 1–13–1816, 2014 WL 5488054, at *2 (Ill. App. Ct. Oct. 9, 2014); *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1160 (D. Minn. 2023); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005).

2005).

Here, Plaintiff Peabody, one of the Florida class representatives, purchased a used RV in a private sale in Arizona (Am. Compl. ¶281), and Plaintiff Alterman, the other Florida class representative does not allege that he purchased his RV directly from Grand Design (Am. Compl. ¶220). Plaintiff Auble, the Ohio class representative, alleges that he purchased his RV from a dealer, not directly from Grand Design, and therefore cannot maintain a claim for unjust enrichment against Grand Design. (Am. Compl. ¶213.) Because these Plaintiffs have not directly conferred any benefit upon the Defendants, their claims for unjust enrichment must be dismissed. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 255 F.Supp.3d 1241, 1261 (S.D. Fla. 2017) (dismissing unjust enrichment claim where plaintiff did not purchase the allegedly defective vehicle directly from the manufacturer); *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451, at *7 (N.D. Ohio Aug. 31, 2012) (dismissing unjust enrichment claim where plaintiff did not purchase allegedly defective washing machine directly from the manufacturer).

Next, Indiana and Georgia limit claims for unjust enrichment to situations where the plaintiff conferred a benefit on the defendant with the expectation that the defendant would be responsible for the cost. *See Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012); *Sitterli v. Csachi*, 811 S.E.2d 454, 457 (Ga. App. 2018). Unjust enrichment does not apply to these facts because none of the named Plaintiffs or absent class members have alleged facts demonstrating that they expected any payment from the Defendants.

V.    **Conclusion**

Based on the foregoing, Defendants respectfully request that their Motion be **GRANTED**.

30

Dated: July 28, 2025

/s/ Erica A. Ramsey
Brendan V. Johnson
Erica A. Ramsey
**ROBINS KAPLAN LLP**
150 East 4th Place, Suite 704
Sioux Falls, SD 57104
605.335.1300
bjohnson@robinskaplan.com
eramsey@robinskaplan.com

A. Elizabeth Burnett
Marcus Guith
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
612.349.8500
eburnett@robinskaplan.com
mguith@robinskaplan.com

Hans Pijls
**DINSMORE & SHOHL LLP**
300 N. Fifth Avenue, Suite 120
Ann Arbor, MI 48104
248.719.1390
hans.pijls@dinsmore.com

COUNSEL FOR DEFENDANTS
WINNEBAGO INDUSTRIES, INC. AND
GRAND DESIGN RV, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2025, a true and accurate copy of the foregoing Defendants'

**Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint** was

electronically filed with the Clerk of Court by using the CM/ECF system to all registered parties.


*/s/ Erica A. Ramsey*
**ROBINS KAPLAN LLP**
Erica A. Ramsey
150 East 4th Place, Suite 704
Sioux Falls, SD 57104
605.335.1300
eramsey@robinskaplan.com