# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MATTHEW AUBLE, JOSEPH ALTERMAN, DON BILYEU, LEO CRITCHFIELD, MICHAEL CROTEAU, LUCY AND ANDREW HALLBERG, MICHAEL O'NEAL, DANIEL PEABODY, GARY PFEIFFER, COLLIN REESE, JIM RIEBER, MATTHEW THOMPSON, and GUSTAV VANZYL, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br>v.<br><br>WINNEBAGO INDUSTRIES, INC. and GRAND DESIGN RV, LLC,<br><br>       Defendant. | Civil Action No.: 3:25-cv-00240<br><br>Judge Philip P. Simon |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ................................................................................................. iv

TABLE OF AUTHORITIES.................................................................................................... vii

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

   A.   Grand Design's RVs are Manufactured with Defective Frames. ....................................... 2

   B.   Defendants Knew the Fifth Wheels' Frames were Defective. ........................................... 3

   C.   In Spite of Their Knowledge, Defendants Failed to Disclose the Frame Defect in the Fifth Wheels and Affirmatively Misled Their Customers. .................................................................. 4

   D.   Defendants Attempted to Conceal the Frame Defect Through NDAs, Online Censorship, and Misleading Public Statements. ................................................................................................ 4

   E.   Unable to Conceal the Frame Defect Entirely, Defendants Attempted to Minimize Customer Complaints and Regulatory Scrutiny Beginning in 2024........................................... 5

   F.   Plaintiffs Relied on Defendants' Omissions and Misrepresentations and Suffered Damage When the Frames on Their Fifth Wheels Failed. ......................................................................... 6

ARGUMENT .............................................................................................................................. 7

   A.   The Court Has Personal Jurisdiction Over Winnebago. ................................................... 7

      1.   General Jurisdiction Exists Because Winnebago's Contacts with Indiana are Continuous, Systematic, and Extensive. ..................................................................................... 8

      2.   Specific Jurisdiction Exists Because Plaintiffs' Claims Arise Out of and Relate to Winnebago's Purposeful Availment of the Forum State. ...................................................... 10

         a.   Winnebago purposefully directed its conduct toward Indiana and  availed itself of the benefits of conducting business in the State. .......................................................... 10

         b.   Plaintiffs' claims arise out of or relate to Winnebago's forum-related conduct.........11

      3.   Exercising Jurisdiction in Indiana is Fair and Reasonable. ........................................ 12

   B.   Pleading Nationwide Claims Under Indiana and Minnesota Law Does Not Violate Due Process. ...................................................................................................................................... 14

   C.   Plaintiffs' Statutory Claims Meet Rule 9(b)'s Pleading Requirements............................ 17

   D.   The Court Should Deny the Motion to Dismiss Plaintiffs' Statutory Claims.................. 18

      1.   The Complaint Adequately Alleges Deceptive Acts Under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA..................................................................................... 18

         a.   Defendants' Failure to Disclose the Frame Defect is Actionable Under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA. ................................................ 19

b.    Defendants Made Actionable Misrepresentations Under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA. ................................................................ 22

c.    Plaintiffs Plead an Incurable Deceptive Act Under the IDCSA. ............................... 24

2.    Plaintiffs Adequately Plead Defendants' Knowingly Concealed Frame Defects in Violation of the CCPA and GFBPA or Recklessly Under the NHCPA. ................................ 25

3.    Plaintiff Auble Plausibly Alleges Deceptive Conduct "in Connection with the Sale" Under the ACFA. ...................................................................................................... 26

4.    The Complaint Alleges Inadequate Remedies at Law Sufficient to Plead a Claim Under the CUCL. ................................................................................................................ 27

5.    Defendants' Deceptive Acts Have Significant Public Impact. ...................................... 28

6.    Plaintiff Peabody Has Standing to Pursue Claims Under FDUTPA. .......................... 29

7.    Plaintiff O'Neal's OCSPA Claim Should Not Be Dismissed. .................................... 30

E.    Plaintiffs' Claims Are Not Barred By the Economic Loss Doctrine. ................................ 31

1.    Plaintiffs Lack an Adequate Contractual Remedy Against Defendants. ....................... 31

2.    Plaintiffs Allege Harm to Other Property and Out-of-Pocket Losses. .......................... 32

F.    Plaintiffs Plead Viable Unjust Enrichment Claims Under California, Florida, Indiana, and Ohio Law. ........................................................................................................................ 33

CONCLUSION .................................................................................................................. 34

## STATEMENT OF THE ISSUES

**A.  Whether Winnebago Industries, Inc. is subject to personal jurisdiction in Indiana based on its continuous and systematic contacts with Indiana, its relationship with Grand Design, Inc., and its role in the alleged conduct.**

(Plaintiffs maintain this Court can properly exercise either general or specific personal jurisdiction over Winnebago Industries, Inc.)

**B.  Whether the Court should deny Defendants' motion to dismiss nationwide class claims because those claims purportedly violate due process.**

(Plaintiffs contend that Defendants' argument is premature at the pleading stage, and that application of Indiana and Minnesota law is constitutionally permissible to allow claims under the First Cause of Action (IDCSA), Second Cause of Action (MPCFA), Third Cause of Action (MDTPA), Fourteenth Cause of Action (Negligence), and Fifteenth Cause of Action (Unjust Enrichment))

**C.  Whether Plaintiffs have pled their statutory consumer-fraud claims with sufficient particularity under Rule 9(b).**

(Plaintiffs assert that their pleadings meet Rule 9(b)'s requirements, and Causes of Action Nos. 1–13 are well-pled under Rule 9(b).)

**D.  Whether Plaintiffs have sufficiently stated viable claims under the relevant statutory consumer-protection statutes by alleging deceptive acts, omissions, and Defendants' knowledge of the defect at the time of sale.**

**1.  Whether Plaintiffs have adequately alleged violations of the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA by pleading actionable omissions, misrepresentations, and unlawful conduct.**

(Plaintiffs assert that each statutory claim is properly pled, including the First Cause of Action (IDCSA), Second Cause of Action (MPCFA), Third Cause of Action (MDTPA), Fifth Cause of Action (CFAL), Tenth Cause of Action (ICFA), and Eleventh Cause of Action (NHCPA))

**2.  Whether Plaintiffs have sufficiently alleged Defendants' knowledge or intent, as required under the CCPA, GFBPA, and NHCPA.**

(Plaintiffs contend they have adequately pled intent or knowledge to sustain Seventh Cause of Action (CCPA), Ninth Cause of Action (GFBPA), Eleventh Cause of Action (NHCPA))

**3.  Whether Plaintiff Auble has sufficiently alleged deceptive conduct "in connection with" the sale and advertisement of merchandise under the Arizona Consumer**

Fraud Act (ACFA) by showing Defendants' role in disseminating misleading materials, making misleading representations, and omitting material information that influenced the purchase.

(Plaintiffs assert that the Fourth Cause of Action (ACFA) is properly pled)

4. **Whether Plaintiffs have stated a valid claim under the California UCL by alleging that legal remedies are inadequate to fully compensate for Defendants' unjust conduct and by pleading equitable remedies in the alternative.**

(Plaintiffs contend equitable relief is warranted and may properly be pled in the alternative, such that the Sixth Cause of Action (CUCL) is well-pled)

5. **Whether Plaintiffs have sufficiently pled a significant public impact under the CCPA by alleging Defendants made deceptive representations and omissions that harmed all purchasers of 2020 – 2023 Fifth Wheels.**

(Plaintiffs argue that the CCPA's public impact requirement is met and the Seventh Cause of Action (CCPA) is properly pled)

6. **Whether Plaintiff Peabody has standing to assert a FDUTPA claim based on the nature of the deceptive conduct and resulting harm, and its close nexus to Florida.**

(Plaintiffs maintain that the Eighth Cause of Action (FDUTPA) is properly asserted)

7. **Whether Plaintiff O'Neal's OCSPA claim is timely based on equitable tolling, given Plaintiffs' allegations that Defendants concealed the defect at the time of sale, and whether Defendants' motion is premature where facts relevant to the statute of limitations defense require further development through discovery.**

(Plaintiffs argue that the Twelfth Cause of Action (OCSPA) claim is not barred by the statute of limitations and that the issue cannot be resolved on the pleadings alone.)

E. **Whether the economic loss doctrine does not bar Plaintiffs' negligence claims where Plaintiffs lack an adequate contractual remedy against Defendants, such that the animating purpose of the doctrine—to prevent tort claims that duplicate contract remedies—is not implicated, and Plaintiffs allege safety risks and damage to property beyond the RVs themselves.**

(Plaintiffs assert that the economic loss doctrine does not apply to the Fourteenth Cause of Action (Negligence), under the law of Arizona, California, Colorado, Florida, Georgia, Illinois, Indiana, Minnesota, New Hampshire, and Ohio should be sustained)

F. **Whether Plaintiffs have stated valid claims for unjust enrichment under California, Florida, Georgia, Indiana, and Ohio law by alleging that Defendants knowingly retained benefits obtained through deceptive and misleading practices.**

(Plaintiffs contend that the Fifteenth Cause of Action (Unjust Enrichment), under the law of California, Florida, Indiana and Ohio is properly pled).

## TABLE OF AUTHORITIES

**Cases**

*1st Source Bank v. Vill. of Stevensville*, 905 F. Supp. 2d 898 (N.D. Ind. 2012) ................. 8, 10, 12

*3C, LLC v. SS Distro USA, LLC*, 2025 WL 964703 (S.D. Ind. Mar. 31, 2025) ............................ 8

*Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741 (N.D. Ill. 2018) ........................................................ 15

*Arkansas Pub. Emp. Ret. Sys. V. GT Solar Int'l Inc.*, No. 08-CV-312-JL, 2009 WL 3255225
   (D.N.H. Oct. 7, 2009) ........................................................................................................ 24

*Armstrong v. Deere & Co.*, No. 1:16-CV-00844-TWP-MPB, 2017 WL 4168485 (S.D. Ind. Sept.
   20, 2017) ............................................................................................................................ 34

*Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019) ........................ 17

*BNSF Railway Co. v.* Tyrell, 581 U.S. 402 (2017) ...................................................................... 9

*Bojko v. Pierre Fabre USA Inc.*, 2023 WL 4202663 (N.D. Ill. June 27, 2023) ........................... 21

*Boyd v. Target Corp.*, 750 F. Supp. 3d 999 (D. Minn. 2024) ...................................................... 14

*Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) .................................................. 33

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................. 10, 11, 13

*Castagna v. Newmar Corporation*, 340 F. Supp. 3d 728 (N.D. Ind. 2018) ................................ 24

*Chen v. Target Corp.*, 2022 WL 1597417 (D. Minn. May 19, 2022) ........................................... 14

*Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660 (D. Minn. 2021) ......................................... 19

*Darne v. Ford Motor Co.*, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2012) ....................................... 21

*Dupuis v. GATR of Sauk Rapids, Inc.*, No. A17-1782, 2018 WL 3614320 (Minn. Ct. App. July 30,
   2018) .................................................................................................................................. 23

*Evans v. Wright Med. Tech., Inc.*, No. 319CV00160DRLMGG, 2019 WL 5390548 (N.D. Ind.
   Oct. 21, 2019) .................................................................................................................... 10

*Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107 (N.D. Cal. 2020) ........................... 27

*Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682
   (Minn. 2014) ...................................................................................................................... 19

*Grover v. BMW of N. Am., LLC*, 581 F. Supp. 3d 930 (N.D. Ohio 2022) ................................... 30

*Gunkel v. Renovations, Inc.*, 822 N.E.2d 150 (Ind. 2005) ................................................... 32, 33

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015) ......................................... 33

*Himan v. Thor Indus., Inc.*, No. 3:21-CV-239 JD, 2022 WL 683650, (N.D. Ind. Mar. 8, 2022).. 18

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) ........................................................... 20, 21

*Housley v. Thor Motor Coach Inc.*, 566 F. Supp. 3d 916 (N.D. Ind. 2021) ................................ 22

*Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010) ......................................................... 11

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) .............................................. 15

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997) .................. 17

*In re Takata Airbag Prods. Liab. Litig.*, 225 F. Supp. 3d 1241 (S.D. Fla. 2017) ........................ 33

*Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind.
   2010) .................................................................................................................................. 32

*Lake Ridge New Tech Sch. v. Bank of New York Mellon, Tr. Co., N.A.*, 353 F. Supp. 3d 745 (N.D. Ind. 2018) ............................................................................................................................... 31

*LinkAmerica Corp. v. Cox*, 857 N.E.2d 961 (Ind. 2006) ........................................... 8, 10, 12, 13

*Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) .................................................................... 15

*Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045 (E.D. Cal. 2022) ...................................... 18, 20

*Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221 (S.D. Fla. 2002) ............................... 29

*Nava v. Kobe Steel*, 2019 WL 5173767 (N.D. Cal. Oct. 8, 2019) ........................................... 33

NUCOR Corp. v. Aceros Y Maquilas de Occidente, 28 F.3d 572 (7th Cir. 1994) ................. 29, 30

*PC Connection, Inc. v. Int'l Bus.* Machines Corp., 687 F. Supp. 3d 227 (D.N.H. 2023) ............ 24

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ................................................... 15

*Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952) ............................................... 8

*Phelps v. Lengyel*, 237 F. Supp. 2d 829 (N.D. Ohio 2002) ................................................. 30

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ......................................... 14, 15, 16

*Purdue v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003) .......................................... 7

*Regueiro v. FCA US, LLC*, 2023 WL 3564761 (C.D. Cal. May 4, 2023) ...................................... 28

*Seutter v. Mead Johnson Nutrition Co.*, 763 F. Supp. 3d 783 (D. Minn. 2025) ...................... 19, 20

*Song v. Champion Petfoods USA, Inc.*, No. 2020 WL 7624861 (D. Minn. Dec. 22, 2020) ......... 20

*State v. TikTok Inc.*, 245 N.E.3d 681 (Ind. Ct. App. 2024) ............................................. 23, 24

*Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402 (N.D. Ill. 2021) 14, 15

*uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421 (7th Cir. 2010) ........................................ 8, 11

*Watts v. Medicis Pharm. Corp.*, 365 P.3d 944 (Ariz. 2016) ............................................. 26, 27

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ............................................. 20

*Wine & Canvas Dev., LLC v. Weisser*, 886 F. Supp. 2d 930 (S.D. Ind. 2012) ............................ 13

*Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784 (Ind. 2012) ........................... 34

## Statutes

Ariz. Rev. Stat. § 44-1522 ................................................................................ 26, 27

## Other Authorities

*Beer v. Bennett*, 993 A.2d 765 (N.H. 2010) ......................................................... 25

*G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534 (7th Cir. 2012) ............................... 25

Ind. Code Ann. § 24-5-0.5-2. ....................................................................... 24

*O'Connor v. BMW of N. Am., LLC*, No. 18-cv-03190-CMA-STV, 2020 WL 2309617 (D. Colo. Jan. 7, 2020) ......................................................................................... 25

*Paulk v. Thomasville Ford Lincoln Mercury*, 732 S.E.2d 297 (Ga. App. 2012) ........................ 25

*Reger v. Ariz. RV Ctrs., LLC*, 515 F. Supp. 3d 915 (N.D. Ind. 2021) ................................. 24

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) .. 25, 28

## Rules

Ind. R. Trial P. 4.4(a) ................................................................................. 7

**Treatises**

Restatement (*Second*) of Torts § 539 (Am. L. Inst. 1977) ........................................................... 22

## INTRODUCTION

In this case, Plaintiffs allege that Defendants Grand Design RV, LLC ("Grand Design") and its parent, Winnebago Industries, Inc. ("Winnebago"), knowingly concealed a critical defect in the frames installed in four popular towable RV models, the Solitude, Influence, Reflection, and Momentum. Beginning in 2020, as the United States entered the COVID-19 lockdown, Defendants built these RVs larger and heavier to accommodate full-time life on the road. But Defendants failed to redesign the RVs' frames to accommodate the added weight and anticipated wear and tear. Instead, they utilized the frame design from earlier, smaller RVs. It wasn't long before customers purchasing 2020 models started to report that their RV frames were cracking or, in serious cases, breaking. This condition, referred to as "excessive frame flex," or "frame failure," jeopardizes the structural integrity of the RV, causing walls to bow, fixtures and cabinets to shift or fall, roofs to leak, and slideouts to open when the RV is traveling down the road. Needless to say, frame failure is dangerous.

Defendants knew that their frames were not designed to support the weight of the RV, but sold them anyway, racing to take advantage of the upsurge in RV demand triggered by the lockdown. When government regulators notified Defendants about a spike in incidents of frame failure, Defendants put their heads down and continued to sell. And when warranty claims related to frame failure skyrocketed, Defendants did not change course. Ultimately, Defendants manufactured the model year 2020-2023 Solitude, Influence, Reflection, and Momentum with the same defective frame. Tens of thousands of customers purchased these RVs, often for well over $100,000. And as customer experience has shown, Defendants are unable to fix their defective frames, rendering those RVs unsafe and effectively useless.

Plaintiffs seek to hold Defendants liable for concealing this critical frame defect and have alleged several statutory and common law claims, which Defendants argue should be dismissed.

1

Defendants are wrong. No state law pled in the Amended Complaint permits a manufacturer to market products with a known, concealed safety defect, or to represent that a product with such a known defect is safe and suitable for its intended purpose. For the reasons set forth below, the Court should deny Defendants' motion to dismiss and allow Plaintiffs' claims to proceed.

## FACTUAL BACKGROUND

Founded in 2012, Grand Design quickly became one of the fastest growing RV brands in the world, based, in large part, on its unique approach to safety and pre-sale inspection process. Amended Complaint (hereafter, "Compl.") ¶¶ 58-59, 62-65, ECF No. 21. In 2016, Winnebago acquired Grand Design for $500 million. *Id.* ¶ 70. And as part of this acquisition, Winnebago installed its executives on Grand Design's board, exercised complete control over Grand Design's operations, and terminated Grand Design's pre-sale inspection process, emphasizing production quantity over quality. *Id.* ¶¶ 29-31, 100-105. Winnebago's focus was to maximize profits. *Id.* ¶ 71.

### A.    Grand Design's RVs are Manufactured with Defective Frames.

Winnebago's most popular RVs—the Solitude, Influence, Reflection, and Momentum models—represent its line of supersized fifth wheels, which are towable RV units that hitch to the back of a vehicle, such as a pickup truck. *Id.* ¶¶ 50, 60. In pertinent part, these fifth wheels are built larger than those of its competitors—approximately 4,000 pounds heavier, on average—and sit upon a frame, which, like the foundation of a house, is supposed to support the living space above. *Id.* ¶¶ 50, 52-53, 122-123. To design a frame capable of supporting an RV, manufacturers consider both the vehicle's floor plan, which allocates weight distribution across the frame, as well as the model's "gross vehicle weight rating," which determines how much weight can safely be loaded onto the RV frame; the frame, in turn, must be both flexible enough to absorb the stress of ordinary use and strong enough to support the weight that rests atop it. *Id.* ¶¶ 123, 127-28.

While Grand Design's Reflection, Influence, Solitude, and Momentum models from years 2020-2023 (hereafter, the "Fifth Wheels") vary in size and weight, they are all built on the same frame. *Id.* ¶ 61. However, as Plaintiffs came to learn—only after purchasing their Fifth Wheels—Defendants' frames were not able to support the weight of the structures sitting on top of them, causing the frame to bend or break, and the structure above to lose its integrity, resulting in loose bolts, creaky floors, bowing walls, roof damage, spider-cracking, and damage to fixtures. *Id.* ¶¶ 108-09, 147-50. In more serious circumstances, the RV's I-beams cracked and/or the upper deck failed, rendering the RV unlivable and too dangerous to operate. *Id.* ¶¶ 150-51. Repairing frame failure can cost tens of thousands of dollars; often times, repairs are ineffective and the frame failure recurs. *Id.* ¶¶ 152-53.

**B.    Defendants Knew the Fifth Wheels' Frames were Defective.**

For years, Defendants alone knew that the frames in their Fifth Wheels were defective and could not support the stress of normal and foreseeable use. *Id.* ¶¶ 132, 161, 182. Shortly after the model year 2020 Fifth Wheels were introduced, the National Highway Traffic Safety Administration ("NHTSA") informed Defendants of a sharp increase in consumer complaints regarding frame failure, *id.* ¶ 113, which continued into 2021 and 2022. *Id.* ¶ 114.[1] And yet, Defendants knew the rate of frame failure was much greater than reported; consumer warranty claims related to frame failure skyrocketed, increasing 278% between 2017 and 2023. *Id.* ¶¶ 167-68. Winnebago's Senior Vice President and Chief Financial Officer, Brian Hughes, referred to this sharp increase as "historical quality issues" in a 2025 earnings call, acknowledging that Defendants were even then still receiving elevated warranty claims related to the Fifth Wheels. *Id.* ¶ 170.

---

[1] Of course, the number of complaints reported to NHTSA represents only a fraction of the true rate of frame failure in the Fifth Wheels. Compl. ¶ 119.

3

### C. In Spite of Their Knowledge, Defendants Failed to Disclose the Frame Defect in the Fifth Wheels and Affirmatively Misled Their Customers.

At no time have Defendants acknowledged or warned their customers that the Fifth Wheels' frames are incapable of carrying the weight of the structure atop them. *Id.* ¶¶ 96, 133, 141. In fact, they have done just the opposite – publicly characterizing systemic frame failure in Fifth Wheels as "misinformation" and "rumors," *id.* ¶ 173, and representing that the Fifth Wheels were functionally sound and able to withstand the rigors of the road. *Id.* ¶¶ 75-76. For example, in brochures provided directly to customers, Defendants characterized the Fifth Wheels as "Quality driven. Customer focused. Built to last." *Id.* ¶ 78. On their website, they stated that the Fifth Wheels were "constructed to a superior standard," designed to withstand the environmental pressures attendant with full-time living, and built using "superior construction standards." *Id.* ¶¶ 82-83, 93. And through their team of paid social media ambassadors, they promised that Fifth Wheels were "like a house on wheels," built to withstand "earthquake and hurricane type conditions." *Id.* ¶ 89.

To make matters worse, Defendants also affirmatively misrepresented the Fifth Wheels' Gross Vehicle Weight Rating, which is the total weight that can be safely loaded onto each of the Fifth Wheels' frames. *Id.* ¶¶ 127, 133-37. In fact, only after purchase did customers learn that their Fifth Wheels exceeded that weight threshold even when the RVs were empty. *Id.* ¶ 134. Following widespread reports of frame failure, Defendants retroactively reduced the Gross Vehicle Weight Rating of the Fifth Wheels, meaning that the representations made at the time of sale were inaccurate at best. *Id.* ¶¶ 135-36. The Fifth Wheels, in other words, are defective by design.

### D. Defendants Attempted to Conceal the Frame Defect Through NDAs, Online Censorship, and Misleading Public Statements.

As early as 2020, customers who purchased one of the Fifth Wheels began reporting instances of frame failure on internet message boards and Facebook discussion groups. *Id.* ¶¶ 161-65. These online consumer reports were, of course, anecdotal, and customers lacked Defendants'

internal data demonstrating skyrocketing warranty claims, as well as their knowledge that the frames were insufficiently designed to withstand the weight of the Fifth Wheels. *Id.* ¶¶ 166-69. Yet, Defendants did not acknowledge or address the defect at that point. Instead, Defendants worked to minimize the consumer reports, categorizing these online discussions as "misinformation that has been disseminated on social media." *Id.* ¶ 174.

More recently, Defendants have taken proactive measures to silence their customers online. First, Defendants have contacted customers, offering to repair their defective RV in exchange for signing a non-disclosure agreement ("NDA") and removing critical online posts. *Id.* ¶¶ 188-90. Second, Defendants have quietly removed representations from Grand Design's website that their Fifth Wheels are fit for "Full-Time Living." *Id.* ¶ 186. And third, they have revised their online FAQs, claiming now that frame failure is the result of "numerous factors," such as "road impacts, collisions, loading and weight distribution," but not defectively designed frames. *Id.* ¶ 179.

### E.    Unable to Conceal the Frame Defect Entirely, Defendants Attempted to Minimize Customer Complaints and Regulatory Scrutiny Beginning in 2024.

When their efforts to bury complaints of frame failure with NDAs were unsuccessful, Defendants issued a Technical Service Bulletin ("TSB") to their authorized RV dealers in 2024. *Id.* ¶ 194. TSBs are used by automakers to alert dealers and repair technicians—but not the public generally—of common problems that the automaker does not consider to be "safety issues." *Id.* ¶¶ 195, 198. The 2024 TSB states that Solitude and Momentum models, but not Reflection and Imagine models, may experience "cosmetic damage" due to what they called "miniscule" frame flex. *Id.* ¶¶ 196-97. This description minimized the prevalence and seriousness of frame failure and inadequately advised repair technicians on how to address the issue. *Id.* ¶¶ 197-201.

In June 2024, Defendants further attempted to placate an increasingly frustrated customer base by announcing a new, extended warranty program for Fifth Wheels. *Id.* ¶ 203. Under this

program, the original and subsequent purchaser of a Fifth Wheel could obtain certain covered repairs for up to five years from the date of original purchase, provided that the purchaser registered with Grand Design within thirty days of purchase. *Id.* ¶¶ 203-04. But Defendants' extended warranty program failed to acknowledge the systemic defect in Fifth Wheel frames, instead excluding damages caused "by overloading, excess weight or improper weight distribution," as well as damages "caused by surface road conditions," and thus allowing Defendants to characterize incidents of frame failure as uncovered damages. *Id.* ¶ 209. Moreover, the extended warranty erects additional hurdles, requiring customers to notify Defendants—who otherwise refuse to acknowledge design-related frame failure—within twenty days of when frame failure "should have been discovered by a reasonable person exercising reasonable care." *Id.* ¶ 208. Defendants' efforts to deny the existence of frame failure has made it difficult, if not impossible, for customers to exercise their rights under the extended warranty. *Id.* ¶¶ 207-08, 211.

### F.    Plaintiffs Relied on Defendants' Omissions and Misrepresentations and Suffered Damage When the Frames on Their Fifth Wheels Failed.

Each Plaintiff purchased a Fifth Wheel that subsequently exhibited excessive flex or failed entirely. *Id.* ¶¶ 213, 215-18, 220, 223-27, 229-32, 234-39, 242, 245-49, 251, 254-58, 261-62, 265, 271, 274, 276-78, 281, 285-87, 290, 293-96, 298, 301-03, 307, 310-13, 315, 318-20, 322, 325-27. Prior to these transactions, each Plaintiff conducted research into the safety and suitability of the Fifth Wheels as a home on wheels. *Id.* ¶¶ 214, 221, 232, 243, 252, 259, 272, 282, 291, 299, 308, 316, 323. Plaintiffs thus relied on Defendants' material omissions and misrepresentations; indeed, no Plaintiff would have purchased their RV had Defendants disclosed that the frame was defectively designed or if they had not misrepresented the Gross Vehicle Weight Rating of the RV. *Id.* ¶¶ 215, 222, 244, 253, 260, 283, 292, 300, 309, 317, 324. Plaintiffs relied on Defendants' representations that Fifth Wheels were built for full-time living and could withstand normal use of

regular road travel. *Id.* ¶¶ 213, 240, 258, 273, 284, 288. Thus, Plaintiffs did not receive the benefit

of their bargain, and in turn, suffered out of pocket losses related to frame failure. *Id.* ¶¶ 219, 228,

231, 240-41, 246, 249-50, 256-57, 263-64, 269-70, 288-89, 297, 304, 306, 314, 319, 321, 327.

### ARGUMENT

Defendants raise a number of arguments to avoid their responsibility in this matter. They

claim that (i) the Court lacks jurisdiction over Winnebago; (ii) Plaintiffs' nationwide pleading

violates due process; (iii) the Complaint fails to comport with Rule 9(b); (iv) twelve of thirteen

state-law statutory claims are deficiently pled; (v) the Economic Loss Doctrine bars Plaintiffs'

negligence claims; and (vi) unjust enrichment claims under five states' laws are not well pled.

Plaintiffs address each of these arguments in turn.

### A.    The Court Has Personal Jurisdiction Over Winnebago.

Defendants argue that the Court lacks both general and specific jurisdiction over

Winnebago. They are wrong on both fronts. A federal district court sitting in diversity may exercise

personal jurisdiction over a nonresident defendant if the forum state could do so. *Purdue v. Sanofi-*

*Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). To that end, a nonresident defendant "submits

to the jurisdiction" of Indiana courts for any action arising from: (1) "doing business" in Indiana;

(2) "causing. . . property damage by an act or omission done within" Indiana; or (3) where it

"derives substantial revenue or benefit from goods, materials, or services used, consumed, or

rendered in this state." Ind. R. Trial P. 4.4(a)(1), (2), (3). "In addition, a court of this state may

exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United

States." Ind. R. Trial P. 4.4(a). Winnebago continuously and systematically conducts business and

derives revenue within Indiana (by manufacturing, marketing, selling, and repairing the Fifth

Wheels) and has caused property damage through its acts and omissions made within the state.

Under the plain language of Trial Rule 4.4(a), Winnebago has submitted to jurisdiction in Indiana.

Moreover, exercising personal jurisdiction over Winnebago is consistent with the Federal Due Process Clause. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006); *see also 3C, LLC v. SS Distro USA, LLC*, 2025 WL 964703, at *3 (S.D. Ind. Mar. 31, 2025) ("Whether personal jurisdiction is proper under Indiana's long-arm statute and the Due Process Clause therefore 'collapses into a single search for what the outer limits of due process permit.'") (internal citation omitted). Due process requires only that a defendant have "minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *1st Source Bank v. Vill. of Stevensville*, 905 F. Supp. 2d 898, 904 (N.D. Ind. 2012) (internal quotations omitted). Winnebago's contacts with Indiana far surpass the "minimum contacts" threshold, and litigating this case in Indiana is reasonable, foreseeable, and promotes judicial efficiency. The Court should deny Winnebago's motion to dismiss for lack of personal jurisdiction.

### 1.    General Jurisdiction Exists Because Winnebago's Contacts with Indiana are Continuous, Systematic, and Extensive.

"A defendant is subject to general jurisdiction when it has 'continuous and systematic general business contacts' with the forum state." *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425 (7th Cir. 2010). This question is "one of general fairness" and asks the court to determine whether "the amount and kind of activities . . . carried on by the foreign corporation in the state of the forum" make it "reasonable" to "subject that corporation to the jurisdiction of that state." *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 445 (1952). Thus, while general jurisdiction typically will not apply where the underlying contacts are wholly "unrelated" to the alleged harm, the Supreme Court has identified a non-exhaustive list of factors considered "enough to make it fair and reasonable to subject [a] corporation to proceedings in personam in that state."[2] *Id.*

---

[2] *See also Daimler AG v. Bauman*, 571 U.S. 117, 129 (2014) (emphasizing that "*Perkins v. Benguet Consol. Mining Co.* remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.").

Here, Winnebago's related contacts with the forum are so systematic and continuous that it is neither unfair nor unreasonable to subject it to general jurisdiction in Indiana. First, Winnebago produces, markets, sells, and provides maintenance on its line of Fifth Wheels in Indiana (and specifically within the Northern District), where it maintains Winnebago offices, staffed with Winnebago employees, who are paid by Winnebago to oversee its Indiana operations. Compl. ¶¶ 34, 36-37. Second, Winnebago's executives—including Donald Clark, Winnebago's VP and President and CEO of Grand Design—are based in Indiana and manage Winnebago's interests and operations in Indiana. *See id*. ¶¶ 30-31. Even Winnebago's "Contact Us" page for Towable RVs, the exact products at issue, acknowledges that Indiana is Winnebago's base of Fifth Wheel operations. *Id*. ¶ 41. Indeed, Winnebago—the self-proclaimed "most-admired RV manufacturer" in the world—even calls Indiana the RV capital of the world. *Id.* ¶¶ 27, 70.

Yet Winnebago now asks this Court to ignore its clear, continuous, and systematic contacts with Indiana based on two inapposite authorities, *BNSF Railway Co. v Tyrell* and *Evans v. Wright Medical Technology*. First, while the defendant railroad in *BNSF* "maintain[ed] less than 5% of its work force and about 6% of its total track mileage" in the forum state, 581 U.S. 402, 402, 414 (2017) (internal quotations omitted), Winnebago is "heavily engaged in activity" in Indiana, far exceeding *BNSF's* minimal commercial presence. Winnebago's investor materials confirm this point, stating, in pertinent part, that its RV Production occurs *only* in Indiana and Iowa, making Indiana not merely "just one state where Winnebago operates," but rather, a critical hub from which Winnebago operates its Fifth Wheel business. *See* Compl. ¶¶ 34, 36; Def. Mot. at 7.

*Evans* is likewise distinguishable. In *Evans*, the court explained that a foreign corporation established under the laws of the Netherlands could not be haled into Indiana where the evidence did not show that it operated an engineering facility in Indiana, and the sole alleged basis for

9

general jurisdiction were statements made on a corporate website that defendant operated in Indiana as well as "over a dozen other nationwide sites." No. 319CV00160DRLMGG, 2019 WL 5390548, at *7 (N.D. Ind. Oct. 21, 2019). But as set forth above, Indiana is a key commercial and manufacturing center for Winnebago, if not a *de facto* secondary headquarters.

Simply put, "there is no question" that Winnebago is "subject to personal jurisdiction in Indiana" where it was "qualified to do business in [Indiana] and maintained a regular place of business in Indiana" despite being headquartered out of state. *LinkAmerica*, 857 N.E.2d at 968.

### 2. Specific Jurisdiction Exists Because Plaintiffs' Claims Arise Out of and Relate to Winnebago's Purposeful Availment of the Forum State.

Even if the Court does not find general jurisdiction, it should assert specific personal jurisdiction over Winnebago because this case arises out of and relates to Winnebago's contacts with Indiana, related to its Fifth Wheels. "[S]pecific jurisdiction is appropriate where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice." *1st Source Bank*, 905 F. Supp. 2d at 905.

### a. Winnebago purposefully directed its conduct toward Indiana and availed itself of the benefits of conducting business in the State.

"[W]here the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (internal citations omitted). There is no dispute that Winnebago has deliberately targeted Indiana. It maintains Fifth Wheel manufacturing facilities in Indiana, recruits Indiana-based employees to build its Fifth Wheels, maintains an

Indiana mailing address specifically for its Fifth Wheel business, sells Fifth Wheels directly to Indiana consumers, and enables consumers to purchase Fifth Wheels in Indiana on its website. *See supra*, § A.1; Compl. ¶¶ 36–38, 41–42, 103; *see also Illinois v. Hemi Group LLC*, 622 F.3d 754, 757-58 (7th Cir. 2010) (holding that an out-of-state business's operation of an interactive website that facilitated sales to Illinois residents satisfied minimum contacts). Thus, Winnebago has both "engaged in significant activities" within Indiana and created "continuing obligations" within Indiana that easily satisfy minimum contacts. *Burger King*, 471 U.S. at 475-76.

      **b.**    **Plaintiffs' claims arise out of or relate to Winnebago's forum-related conduct.**

      As emphasized by the Seventh Circuit, the precise causal relationship between forum contacts and claims "is not important" so long as the relationship is "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *uBID*, 623 F.3d at 427 (internal citation omitted). Thus, the relationship between forum contacts and claims must only be close enough to make jurisdiction foreseeable and fair. *Id.*

      Here, Plaintiffs' claims arise out of and relate to Winnebago's oversight, direction, and involvement in the design, marketing, and manufacture of defective Fifth Wheels, which were made in Indiana and sold under Winnebago's Grand Design brand (which is also at home in Indiana). Compl. ¶ 36. Winnebago directed Grand Design to build its Fifth Wheels to accommodate full time living—resulting in larger and heavier units—yet failed to redesign the frame supporting the additional weight and structural demands. *Id*. ¶¶ 75, 76, 88, 89, 132, 133. Instead, Winnebago authorized cuts to safety to maximize sales. *Id*. ¶¶ 99, 102, 105.

      What's more, the misrepresentations and omissions concerning frame failure were a result of Winnebago's role in directing, marketing, and public relations efforts for its Fifth Wheels. *Id*. at ¶¶ 1, 2, 71, 75, 85, 86, 99-107, 132, 138. Through its shared executives, Winnebago directed Grand Design's consumer-facing communications, including warranty terms, product brochures,

and website disclosures that omitted the known frame defect. *Id*. ¶¶ 76-87, 168-70. Plaintiffs were thus harmed by Winnebago's misrepresentations and omissions, which resulted in a 278% increase in warranty claims. *Id*. ¶¶ 168-69. As explained by Winnebago's Senior Vice President and Chief Financial Officer, Brian Hughes, Winnebago was responsible for "address[ing] the historical quality issues" found in its Fifth Wheels. *Id*. ¶ 170. And as the effects of Winnebago's actions in Indiana were felt nationwide, Winnebago's CEO, Mike Happe, continued to cover up its failures, including characterizing consumer reports of frame failure as "misinformation that has been disseminated on social media." *Id*. ¶¶ 174-75, 177.

In sum, Plaintiffs' harms directly arise from and relate to Winnebago's direction and control over the design, manufacture, marketing and sale of its Fifth Wheels, which occurs in Indiana, and which are sold under the brand of an Indiana-based company. As such, litigation in an Indiana forum is and was reasonably foreseeable to Winnebago.

### 3.    Exercising Jurisdiction in Indiana is Fair and Reasonable.

The final consideration is whether litigating the case in Indiana would offend "traditional notions of fair play and substantial justice." *1st Source Bank*, 905 F. Supp. at 905. The core inquiry is whether, given Defendant's contacts with the state, requiring it to litigate in this forum would be so unreasonable as to violate due process. It would not. *See LinkAmerica Corp.*, 857 N.E.2d at 967 ("[I]f the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable.").

"The reasonableness of asserting personal jurisdiction over Defendants is determined by balancing five factors: (1) the burden on the defendants; (2) Indiana's interest in adjudicating the dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantive social policies." *Wine & Canvas*

12

*Dev., LLC v. Weisser*, 886 F. Supp. 2d 930, 941 (S.D. Ind. 2012) (citing *Burger King,* 471 U.S. at 477). "The assertion of personal jurisdiction will rarely be found unreasonable if 'minimum contacts' are found." *LinkAmerica Corp.*, 857 N.E.2d at 967. Here, all five factors weigh in favor of litigating this case in Indiana:

1. **Burden on Winnebago**: Winnebago is a national manufacturer with significant operations in Indiana. Moreover, Winnebago and Grand Design are represented by the same counsel, so litigating in Indiana will not impose an additional burden on Winnebago.

2. **Indiana's Interest:** Per Indiana's public tourism webpage, which lists factory tours of both Winnebago and Grand Design facilities as an activity for visitors, Indiana has an undeniable connection to Grand Design and Winnebago, and thus a strong public interesting in adjudicating disputes involving Winnebago's false advertising and defective products designed and manufactured within its borders. *Id*. ¶ 27.

3. **Plaintiffs' Interest in Relief**: Plaintiffs are entitled to a convenient and central forum in which to resolve their collective claims involving defects in RVs that were manufactured in Indiana and whose marketing was designed in and disseminated from Indiana.

4. **Judicial Efficiency**: Trying related claims in the forum where the conduct occurred and where evidence related to the design, manufacture, marketing, and sale of the RVs at issue will be found promotes efficiency and avoids duplicative litigation. Forcing Plaintiffs to file a nearly identical suit in Minnesota against Winnebago would be inefficient given the likely overlap in claims, defenses, and evidence.

5. **Shared State Interests**: States have a collective interest in ensuring safety and integrity in the national marketplace, especially where, as here, the product is inherently designed for interstate travel.

Winnebago has deep operational ties to Indiana, shares management with Indiana-based Grand Design, and took an active role in marketing and manufacturing the defective RVs. Each of these factors weigh in favor of jurisdiction in this forum. To dismiss for lack of personal jurisdiction would elevate form over substance and force unnecessary, duplicative litigation in another forum. This Court can and should exercise jurisdiction over Winnebago.

### B.  Pleading Nationwide Claims Under Indiana and Minnesota Law Does Not Violate Due Process.

Defendants contend that the assertion of nationwide class claims under Indiana and Minnesota law violates due process, relying on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). Defendants are incorrect. *Shutts* cautions against the application of a forum state's law to the claims of a nationwide class where the state has only incidental ties to the plaintiffs' claims. The facts of *Shutts* are materially distinguishable from the instant matter, and the due process concerns animating the *Shutts* decision are not present here.

As a threshold matter, Defendants' argument that it violates due process to apply Indiana or Minnesota law to a nationwide class is premature at the pleading stage and should be denied. Courts in this Circuit routinely find that this fact-intensive analysis requires discovery and should be conducted at the class certification stage. *See, e.g.*, *Boyd v. Target Corp.*, 750 F. Supp. 3d 999, 1026 (D. Minn. 2024) (deferring choice-of-law analysis until class certification); *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 411 (N.D. Ill. 2021) (same); *Chen v. Target Corp.*, 2022 WL 1597417, at *7 (D. Minn. May 19, 2022) (sustaining nationwide claims at the pleading stage because "any choice-of-law analysis at this time is premature. . . [and] discovery may show that application of Minnesota law is constitutionally appropriate.")

Indeed, Defendants have failed to identify what substantive conflicts of law purportedly exist between the states, much less analyze how those conflicts are sufficiently material to defeat

14

nationwide certification at the pleading stage. *See Shutts*, 472 U.S. at 816 (explaining that the threshold question in the due process analysis is whether Kansas law "conflicts in any material way with any other law which could apply" because there is no injury in applying Kansas law if there is no conflict); *Tex. Hill Country*, 522 F. Supp. 3d at 411 (deferring decision until class certification where defendant did "not show that the conflicts of law it has identified are material enough to defeat certification at the pleading stage.") Nor could Defendants engage in such analysis without discovery. *See Tex. Hill Country*, 522 F. Supp. 3d at 411 ("Because the ongoing discovery could significantly affect the choice of law analysis, conducting one now would be premature.") Thus, Defendants' argument should be summarily rejected at this time.

Moreover, despite what Defendants allude to in referencing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002), nationwide classes are not impermissible in this Circuit. *See Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (emphasizing in a consumer fraud case that *Bridgestone* "did not mean that nationwide classes are impermissible as a matter of law"); *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) ("[T]here is not and should not be a rule that [consumer fraud class actions] never can be certified.") "To the contrary, the Seventh Circuit has upheld decisions to certify a nationwide class so long as 'the central questions in the litigation are the same for all class members.'" *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 757 (N.D. Ill. 2018) (citing *Pella Corp.*, 606 F.3d at 394). Ultimately, "[c]lass certification analysis is necessarily contextual, and the context—including whether and how to create subclasses—is in this instance better explored under Rule 23," rather than under Rule 12. *Id.* at 757-58.

Even if Defendants' arguments were ripe (they are not), the Complaint's nationwide pleading under Indiana and Minnesota law does not violate due process. The Supreme Court's test, outlined in *Shutts*, asks whether the state whose law would apply to the class has a "significant

aggregation of contacts" to class members' claims, "creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 821-22. "When considering fairness in this context, an important element is the expectation of the parties." *Id.* at 822. This case is distinguishable from *Shutts* on both counts.

In *Shutts*, the Supreme Court found that applying Kansas law to a nationwide class violated due process where the defendant, Philips Petroleum, was a Delaware corporation headquartered in Oklahoma, who owned minimal property and conducted negligible business in Kansas, and where "over 99% of the gas leases and some 97% of the plaintiffs in the case had no apparent connection to the State of Kansas except for this lawsuit." *Id.* at 797. Because Kansas' contacts to the claims were merely incidental, neither party would reasonably expect Kansas law to control, and therefore application of Kansas law was "sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822. By contrast, Defendants' contacts with Indiana and Minnesota are not only extensive but also central to the conduct giving rise to the litigation. *See supra*. Grand Design is headquartered in Indiana and Winnebago is both headquartered in Minnesota and subject to personal jurisdiction in Indiana. Defendants should expect that the law of the state in which they are headquartered could control claims against them, which weighs in favor of fairness. *Id.* at 822. And Defendants' claim that the "vast majority of the proposed class has no expectation that Indiana or Minnesota law would apply" fares no better. Def. Mot. at 10. Defendants cite to nothing in the record that supports this assumption – nor could they.[3] Indeed, RV-owning Plaintiffs who purchased an RV designed, manufactured, and distributed from Indiana would expect the law of Indiana—the RV capital of the world—to apply to their claims.

---

[3] This, too, demonstrates the need for discovery before the Court can determine what law the parties expected to apply to their claims, an "important element" in evaluating fairness and arbitrariness in the choice-of-law analysis. *Shutts*, 472 U.S. at 822.

Defendants' reliance on *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369-71 (E.D. La. 1997), is misplaced, as evidenced by the fact that this holding was issued at class certification, not at the motion to dismiss stage. This Court should address any choice-of-law concerns, and the extent to which those concerns impact certification of a nationwide class, through a comprehensive analysis at the class certification stage – not by preemptively barring Plaintiffs' nationwide claims under a misapplication of *Shutts*.

### C.    Plaintiffs' Statutory Claims Meet Rule 9(b)'s Pleading Requirements.

Defendants contend that the Complaint's statutory claims sound in fraud and therefore must comply with Rule 9(b). As Defendants note, the purpose of Rule 9(b) is to give a defendant "fair notice" of the allegations against it. Def. Mot. at 11 (quotation omitted). A claim alleging fraud must generally allege the "'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (internal citation omitted).

The Complaint easily meets the requirements of Rule 9(b). In particular, the Complaint alleges that prior to 2020, Defendants knew that the frames designed for the larger, heavier Fifth Wheels were insufficient to support the RVs' intended weight. Compl. ¶¶ 111, 113, 160-61, 167-68. Further, in 2020, NHTSA informed Defendants of a spike in frame failure related to model year 2020 RVs. *Id.* ¶ 113. NHTSA reported similar increases in frame failure reports in 2021 and 2022. *Id.* ¶ 114. And Defendants' understanding that the Fifth Wheels' frames were defective was further underscored by skyrocketing warranty claims through 2023. *Id.* ¶¶ 167-68.

Despite their knowledge, Defendants concealed the frame defect, *see id.* ¶¶ 96, 111, 141, and instead represented that the Fifth Wheels were suitable for their intended purpose. Defendants claimed, *inter alia*, that the Fifth Wheels were built using superior construction standards, able to withstand earthquake and hurricane conditions, and could safely carry weight consistent with their size. *Id.* ¶¶ 75-76, 89, 93, 133. Defendants knew, however, that the Fifth Wheels could not support

17

the advertised Gross Vehicle Weight Rating and later revised the Rating after the point of sale. *Id.* ¶¶ 134-36. Even when consumers began reporting frame failure in the Fifth Wheels, Defendants worked to silence customers with NDAs and online censorship. *Id.* ¶ 187, 189-90, 193. Winnebago's CEO went even further, disparaging customer complaints as "rumors" and "misinformation" despite his knowledge to the contrary. *Id.* ¶¶ 173-74. These allegations satisfy Rule 9(b). Defendants cannot credibly claim they lack "fair notice" of the claims levied against them. *See Himan v. Thor Indus., Inc.*, No. 3:21-CV-239 JD, 2022 WL 683650, (N.D. Ind. Mar. 8, 2022) (finding Rule 9(b) met in action alleging RV manufacturer failed to disclose manufacturing defect); *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1068 (E.D. Cal. 2022) (allegations that manufacturer failed to disclose known vehicle defect satisfy Rule 9(b)).

### D. The Court Should Deny the Motion to Dismiss Plaintiffs' Statutory Claims.

Defendants move to dismiss twelve of the thirteen statutory claims pled in the Complaint.[4] For the reasons set forth in this section, the Court should reject each of Defendants' arguments.

#### 1. The Complaint Adequately Alleges Deceptive Acts Under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA.

Contrary to Defendants' claims, Plaintiffs sufficiently allege an actionable omission or misrepresentation under the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Indiana Deceptive Consumer Sales Act ("IDCSA"), California False Advertising Law ("CFAL"), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). The Complaint alleges that Defendants knew the frames in their Fifth Wheels were defective; failed to disclose this fact; and instead made numerous representations stating the opposite. Defendants do not dispute that they failed to disclose that the

---

[4] Defendants do not move to dismiss Plaintiffs Bilyeu's claim under the Oregon Unfair Trade Practices Act (OUTPA).

Fifth Wheels' frames were incapable of supporting the weight sitting atop them. Instead, Defendants claim they had no duty to disclose this material defect and argue that such duty arises only where the omission is contrary to a party's affirmative representations. Here, the existence of the frame defect was material to a reasonable consumer, especially in light of Defendants' affirmative representations that, among other things, the Fifth Wheels were fit for full-time living, constructed with superior quality, and could withstand ordinary road conditions.

### a. Defendants' Failure to Disclose the Frame Defect is Actionable Under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA.

Under the MPCFA and MDTPA, a seller has a duty to disclose material information when it possesses "special knowledge of material facts to which the other party does not have access." *See, e.g.*, *Seutter v. Mead Johnson Nutrition Co.*, 763 F. Supp. 3d 783, 793-94 (D. Minn. 2025); *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695-96 (Minn. 2014). Failure to disclose such material information can result in liability. Here, Defendants clearly had special knowledge of material facts their customers lacked – specifically, that the frames installed in their Fifth Wheels were defective. *See, e.g.*, Compl. ¶ 111, 215, 222, 244, 253, 260, 283, 292, 300, 309, 317, 324. Allegations that a manufacturer knew of an undisclosed defective condition are sufficient to establish a duty under Minnesota law, and thus to state a claim for relief under the MPCFA and MDTPA. *See, e.g.*, *Seutter*, 763 F. Supp. 3d at 794 (denying Rule 12(b)(6) motion where manufacturer failed to disclose heavy metals in baby food); *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 675 (D. Minn. 2021) (denying Rule 12 motion where defendant concealed known dishwasher defects).

Rather than engage with these allegations, Defendants argue the "special knowledge" theory has given rise to a duty to disclose in only one case and therefore cannot apply. Def. Mot. at 16. But Defendants' contention, lifted from the district court's decision in *Song v. Champion*

*Petfoods USA, Inc.*, No. 2020 WL 7624861, at *11 (D. Minn. Dec. 22, 2020), is inaccurate; as the federal district court in Minnesota recently explained, although the duty to disclose by virtue of one's special knowledge may have once been narrowly applied, courts have "routinely used Minnesota's special-knowledge exception to find a duty to disclose, especially at the motion-to-dismiss stage." *Seutter*, 763 F. Supp. 3d at 794 (citing cases). The same result is warranted here, where Defendants clearly had knowledge of a defect that consumers lacked.

Defendants' arguments fare no better under California law. To state a claim for material omissions under the CFAL, a plaintiff need only allege that the omission was "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (internal quotation omitted). For vehicle defects, manufacturers have a duty to disclose any defects arising during the warranty period that relate to safety or would result in costly repairs, and that would have deterred purchase if disclosed. *Miller*, 620 F. Supp. 3d at 1068. For defects arising post-warranty, disclosure is required only for "safety issues," and plaintiffs must allege the existence of: (1) a design defect; (2) an unreasonable safety hazard; (3) a causal connection between them; and (4) the manufacturer's knowledge at the time of sale. *Id.* at 1068-69 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017)).

Under either standard, Plaintiffs allege a duty to disclose here. The frame defect poses a safety hazard, causing the Fifth Wheels' slideouts and cargo doors to open while being towed down roadways, which Defendants admit can result in "serious injury or death," Compl. ¶¶ 116-17, 218, 226, 235, 286, 325; and several Plaintiffs were advised by Grand Design or repair technicians not to tow their RVs after frame failures occurred. *Id.* ¶¶ 238, 257, 288, 304. Further, Plaintiffs alleged that they would not have purchased the RV had the frame defect been disclosed. *Id.* ¶¶ 215, 222,

244, 253, 260, 283, 292, 300, 309, 317, 324 335, 601. Defendants ignore these safety allegations entirely. *See* Def. Mot. at 17-18. While Defendants rely on *Hodsdon*, the Ninth Circuit there found no duty to disclose because there was "no physical product defect relating to the central function of [the product] and no safety defect." *Hodsdon*, 891 F.3d at 865. That is not the case here and the framework articulated in *Miller* thus applies.

As to the IFCA, Defendants concede that failure to disclose material information can violate the statute but argue that "Plaintiffs have not identified any communication that was rendered misleading by an omission." Def. Mot. at 18. That is incorrect. Under the IFCA, Plaintiffs must identify a deceptive omission or statement in a communication they viewed or received, such as an advertisement or product label. *See, e.g.*, *Bojko v. Pierre Fabre USA Inc.*, 2023 WL 4202663, at *8 (N.D. Ill. June 27, 2023). Plaintiffs identify multiple such communications: they reviewed information on Grand Design's website, attended factory tours, read promotional brochures, and spoke to Grand Design sales representatives. *See* Compl. ¶ 291 (Illinois Plaintiff allegations); *see also id.* ¶¶ 79-83, 214, 221, 232, 243, 252, 259, 272, 282, 299, 308, 316, 323. These communications promoted Defendants' Fifth Wheels' suitability for regular operation on the road but failed to disclose the frame defect. They also conveyed Gross Vehicle Weight Ratings that misrepresented the RVs' actual carrying capacity. *Id.* ¶¶ 134-37.

Thus, contrary to Defendants' contention, this case is unlike *Darne v. Ford Motor Co.*, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2012), where "there was no allegation that the buyers ever saw any allegedly deceptive communication concerning the products at issue." *Bojko*, 2023 WL 4202663, at *8. Here, Plaintiffs directly engaged with Grand Design's communications to assess the Fifth Wheels' suitability – yet at every step, Defendants omitted the material frame defect.

Finally, Defendants argue that the Court must dismiss the IDCSA claim because the failure to disclose the frame defect was not "unfair, abusive, or deceptive." Def. Mot. at 19. Defendants cite no authorities supporting their characterization of Indiana law – and understandably so. Indiana courts have denied motions to dismiss complaints alleging that an RV was sold with undisclosed latent or hidden defects in violation of the IDCSA. *See, e.g.*, *Housley v. Thor Motor Coach Inc.*, 566 F. Supp. 3d 916, 920 (N.D. Ind. 2021). Defendants' failure to disclose the hidden frame defect and subsequent attempts to conceal it are unfair, abusive and deceptive by definition.

> **b.      Defendants Made Actionable Misrepresentations Under the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and IDCSA.**

As a preliminary matter, Defendants acknowledge that the MPCFA, MDTPA, CFAL, ICFA, NHCPA, and the incurable prong of the IDCSA prohibit affirmative misrepresentations likely to deceive a reasonable consumer. Def. Mot. at 14. And the Complaint clearly identifies numerous misrepresentations regarding the Fifth Wheels' superior construction and suitability for "full-time living" on the road. Compl. ¶¶ 64-65, 75-76, 79, 83-84, 89, 93, 134-137. Each of these misrepresentations conveyed to a reasonable consumer that the Fifth Wheels were safe, structurally sound, and capable of supporting the weight of the RV. *Id.* ¶ 78. Unfortunately, this could not be further from the truth, especially considering Defendants' knowing concealment of the frame defect – a shortcoming they understood rendered the RVs unfit for ordinary use and incapable of withstanding normal wear and tear. *See* Restatement (*Second*) of Torts § 539 (Am. L. Inst. 1977) (emphasizing that implied representations in the consumer-protection context may take the form of a "statement of opinion as to facts not disclosed and not otherwise known to the recipient.")

Yet now that rubber has met the road, Defendants argue that their misrepresentations about safety and quality amount to nothing more than mere puffery – that is, "empty superlatives on which no reasonable person would rely." *State v. TikTok Inc.*, 245 N.E.3d 681, 694-95 (Ind. Ct.

22

App. 2024). Defendants' argument is incorrect; their repeated "[f]alse descriptions of specific or absolute characteristics of" their Fifth Wheels were not mere "seller's *opinion*," but rather, "'express affirmation[s] of fact,'" which were "specific enough to be falsifiable," and thus actionable. *See Dupuis v. GATR of Sauk Rapids, Inc.*, No. A17-1782, 2018 WL 3614320, at *2 (Minn. Ct. App. July 30, 2018) (italics in original); *see also TikTok*, 245 N.E.3d at 694-95 (emphasizing that "***For example, calling a diesel truck 'road ready' is an 'express affirmation of fact,' exposing the seller to liability when the engine block cracks two weeks later and renders the truck inoperable***.") (emphasis added).

That is exactly what is at issue here; at bottom, Defendants' actionable misrepresentations rest on their historic promise that "every" Fifth Wheel, prior to leaving the factory, was subject to their "unique," "198-point" safety inspection, which they repeatedly and consistently touted as "more rigorous" and "more vigorous" than their competitors'. *Id*. at ¶¶ 64-65, 79, 84. Yet, even as warranty claims mounted, Winnebago continued selling Fifth Wheels under the guise that they were built using the same "superior construction standards," *id.* ¶ 93, were suitable for the open road, *id.* ¶ 83, and were designed well enough to withstand even "earthquake and hurricane type conditions." *Id.* ¶ 89. However, this was a farce, as evidenced by the fact that Defendants' Fifth Wheels were not even designed well enough to comply with their own Gross Vehicle Weight Rating, which Defendants later revised after the point of sale. *Id.* ¶¶ 134-37. As Grand Design's founder has stated, "they overbuilt, and they screwed themselves." *Id*. at ¶ 106.

Defendants' misrepresentations about safety were not "so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker" as to render them "inactionable puffery;" rather, they were "'concrete and measurable' representations regarding its [prior] experience, capabilities, and willingness to" guarantee safety and quality that others would not. *PC*

*Connection, Inc. v. Int'l Bus.* Machines Corp., 687 F. Supp. 3d 227, 268 (D.N.H. 2023); *Arkansas*

*Pub. Emp. Ret. Sys. V. GT Solar Int'l Inc.*, No. 08-CV-312-JL, 2009 WL 3255225, at *10 (D.N.H.

Oct. 7, 2009) (finding defendants' puffery argument was "irreconcilable" with their argument that

"the very same statements were 'accurate statements of *historical fact*.'")(emphasis in original).

Simply put, Defendants' argument is baseless and rests on a selective quoting of only six

allegations (out of 604) and a meager, two-sentence description of *Castagna v. Newmar*

*Corporation*, 340 F. Supp. 3d 728, 741 (N.D. Ind. 2018). And disregarding the distinct procedural

posture of that case,[5] the holding in *Castagna* rests on the "distinction between actionable

representations of fact and nonactionable assertions of opinion" detailed in *Kesling v. Hubler*

*Nissan, Inc.*, which, as the Indiana Court of Appeals recently concluded, "is no longer good law

under the DCSA." *State v. TikTok Inc.*, 245 N.E.3d at 969. This court should deny Defendants'

unsupported puffery arguments.

### c.    Plaintiffs Plead an Incurable Deceptive Act Under the IDCSA.

Under the IDCSA, a deceptive representation or omission is incurable where it is "part of

a scheme, artifice, or device with intent to defraud or mislead." Ind. Code Ann. § 24-5-0.5-2(a)(8).

A consumer need not provide pre-suit notice where the defendant's misrepresentation or omission

is incurable. *Reger v. Ariz. RV Ctrs., LLC*, 515 F. Supp. 3d 915, 940 (N.D. Ind. 2021). Defendants'

omissions and misrepresentations are part of an incurable scheme to defraud or mislead their

customers regarding the quality and condition of the Fifth Wheels. Defendants do not contend

---

[5] Defendants' argument is also not proper at the motion to dismiss stage. *See Int. Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022) (noting that "[w]hether a puffery defense . . . can be resolved on a motion to dismiss depends in part on the type of puffery at issue," and emphasizing that where the alleged statements "are provable but are so exaggerated that no reasonably buyer would be justified in relying on them—the court must evaluate how a reasonable buyer would react. This often requires extrinsic evidence of consumer impact. Such a fact-intensive inquiry typically should not be resolved on a motion to dismiss").

otherwise, arguing instead that Plaintiffs failed to provide notice required for an uncured (but curable) claim. *See* Def. Mot. at 19-20. Defendants thus concede that the Complaint adequately pleads an incurable defect under the IDCFA. *See G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) (party waives arguments not made in motion to dismiss).

### 2. Plaintiffs Adequately Plead Defendants' Knowingly Concealed Frame Defects in Violation of the CCPA and GFBPA or Recklessly Under the NHCPA.

To state a claim under the Colorado Consumer Protection Act ("CCPA") and Georgia Fair Business Practices Act ("GFBPA"), Plaintiffs must allege Defendants acted knowingly or intentionally. *See, e.g.*, *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (CCPA); *Paulk v. Thomasville Ford Lincoln Mercury*, 732 S.E.2d 297, 301 (Ga. App. 2012) (GFBPA). Under the NHCPA, Plaintiffs must allege Defendants acted knowingly or were reckless in not knowing. *See Beer v. Bennett*, 993 A.2d 765, 768-70 (N.H. 2010). In short, under these three statutes, Plaintiffs must plead that Defendants knowingly—or in New Hampshire, recklessly—concealed the frame defect.[6] *See O'Connor v. BMW of N. Am., LLC*, No. 18-cv-03190-CMA-STV, 2020 WL 2309617, at *13-14 (D. Colo. Jan. 7, 2020) (failure to disclose known vehicle defect actionable under CCPA). The well-pled allegations in the Complaint more than meet these standards.

By 2020—if not earlier—Defendants knew the Fifth Wheel frames were not designed to support the increased RV weight. *See* Compl. ¶¶ 111, 113, 161. Although NHTSA alerted Defendants to a spike in frame failures that year, *id.* ¶ 113, Defendants were aware the issue was far more widespread, as reflected in surging warranty claims between 2017 and 2023.[7] *Id.* ¶¶ 119,

---

[6] Defendants argue that the NHCPA requires knowing deceptive conduct, but the authority they cite, *Kelton v. Hollis Ranch, LLC*, 927 A.2d 1243 (N.H. 2007), was modified by the New Hampshire Supreme Court ruling in *Beer*.
[7] Defendants attempt to minimize the significance of this data, stating that although warranty claims increased 278%, Defendants also sold twice as many Fifth Wheels during this period, and

167-68. Customers also began sharing frame failure experiences on social media and YouTube – platforms Defendants monitored and sought to censor. *Id.* ¶ 190. Through NDAs, intimidation tactics, and misinformation, Defendants actively concealed the scope and frequency of the defect in their Fifth Wheels. *Id.* ¶¶ 173-74, 188, 190. These well-pled facts satisfy the knowledge or recklessness standards under the CCPA, GFBPA, and NHCPA.

### 3.    Plaintiff Auble Plausibly Alleges Deceptive Conduct "in Connection with the Sale" Under the ACFA.

Defendants argue that Plaintiff Auble cannot bring an Arizona Consumer Fraud Act ("ACFA") claim because he purchased his RV through a dealer, not directly from Grand Design or Winnebago, and thus the alleged misrepresentations were not "in connection with the sale." *See* Def. Mot. at 22–23. But this misstates the law. The ACFA prohibits deceptive or unfair practices made "in connection with the sale or advertisement of any merchandise." Ariz. Rev. Stat. § 44-1522(A). As Defendants acknowledge, the Arizona Supreme Court made clear this statute "does not expressly require a direct merchant-consumer transaction." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). The only relevant inquiry is whether the misrepresentation or omission was connected to the transaction.

Plaintiff Auble alleges that before purchasing his Momentum 399TH, he reviewed detailed information on Grand Design's website, including downloadable brochures; attended in-person and virtual factory tours; and received additional information about the manufacturing process. Compl. ¶¶ 80, 82, 93, 214. These materials were clearly designed to influence consumer decisions and omitted known frame defects. *Id.* ¶¶ 214–15. These omissions occurred while Auble was actively deciding whether to purchase the specific model he ultimately bought, satisfying the

---

thus the increase in warranty claims did not inform Defendants that frames were failing at alarming rates. *See* Def. Mot. at 21. That is Defendants' spin, of course, and not an interpretation of the Complaint in the light most favorable to Plaintiffs. Discovery will tell which party is correct.

ACFA's "in connection with the sale" requirement. *See Watts*, 365 P.3d at 953 (allowing claim where promotional materials were received at the time of sale, even without privity). As in *Watts*, the information came from the manufacturer and was material to his purchasing decision. Defendants' claim that they were not "involved in the sale" or did not "directly provide materials" is refuted by Auble's detailed allegations. *Compare* Def. Mot. at 23 *with* Compl. ¶ 214. Finally, Defendants ignore that the ACFA also prohibits deceptive acts "in connection with the advertisement" of merchandise. Ariz. Rev. Stat. § 44-1522(A). Plaintiff specifically alleges that Grand Design and Winnebago used advertising to conceal known frame defects and induce purchases. Compl. ¶¶ 214-215. That is more than sufficient to plead a viable ACFA claim.[8]

### 4. The Complaint Alleges Inadequate Remedies at Law Sufficient to Plead a Claim Under the CUCL.

Under the California Unfair Competition Law ("CUCL"), Plaintiffs seek, among other things, restitution, disgorgement, and a court-ordered recall of the Fifth Wheels. *See* Compl. ¶¶ 459, Prayer for Relief. Defendants argue this claim must be dismissed because Plaintiffs have not shown inadequate remedies at law, cursorily asserting that money damages alone will be sufficient to compensate Plaintiffs. *See* Def. Mot. at 24. But this *ipse dixit* argument is both premature and legally unsupported. As California courts make clear, plaintiffs are entitled to plead equitable remedies in the alternative, and courts routinely reject efforts to dismiss such claims at the pleading stage. *See, e.g.*, *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage. The equitable remedies

---

[8] Defendants rely on *Bestwick v. Newmar Corp.*, 576 F. Supp. 3d 599 (N.D. Ind. 2021), but that case is both procedurally and factually inapposite. It was decided on a developed record at summary judgment—not the pleading stage—and the plaintiffs failed to identify any specific omission related to the RV model they purchased. The court found plaintiffs' evidence consisted only of generic references to advertisements and a website that did not even list the relevant model. *Id.* at 607.

afforded by the UCL . . . are expressly stated to be in addition to other available remedies at law."). Plaintiffs need only "allege some facts suggesting that damages are insufficient to make them whole." *Regueiro v. FCA US, LLC*, 2023 WL 3564761, at *9 (C.D. Cal. May 4, 2023) (citation omitted). Here, Plaintiffs allege not only loss of the benefit of their bargain, but also time, effort, and hardship caused by the frame defect—harms that money damages alone may not redress. Equitable relief, such as restitution or disgorgement, is therefore properly pled.

### 5. Defendants' Deceptive Acts Have Significant Public Impact.

The CCPA prohibits deceptive conduct that significantly impacts the public, as opposed to private, one-on-one transactions. *See Rhino Linings USA*, 62 P.3d at 149. Defendants argue that Plaintiffs' CCPA claim fails, mischaracterizing Plaintiffs' allegations by claiming they fail to identify "what fraction of consumers" were harmed. Def. Mot. at 25. But the Complaint alleges that *all* purchasers of 2020–2023 Fifth Wheels were impacted by Defendants' deceptive omissions and misrepresentations about the latent frame defect. *See* Compl. ¶ 106-08, 207. Plaintiffs' claims are not limited to a "fraction" of units with manifested failures; rather, under the CCPA, every purchaser—including all members of the Colorado class—was affected, whether their Fifth Wheel has already failed or is destined to fail. *Rhino Linings USA*, 62 P.3d at 149.

Defendants targeted consumers—including Colorado residents—with deceptive conduct designed to induce significant financial investments in Fifth Wheels. Compl. ¶¶ 72–77, 87-90 -92. Plaintiff Reese, a Colorado resident, represents a class of purchasers exposed to the same undisclosed defect. Each faces serious financial, functional, and safety risks due to Defendants' concealment of their under-engineered frames. *Id.* ¶¶ 96, 106-08, 207. And now, all customers face serious financial repercussions: repairs can cost tens of thousands of dollars yet fail to resolve the root defect – leaving owners with unusable, unsellable RVs and burdensome loans. *Id.* ¶¶ 141, 152, 160. The scope of harm is further evidenced by a Facebook group of over 14,000 affected owners,

growing by about 100 members weekly. *Id.* ¶¶ 163-64. And because many Grand Design customers are older or retired adults who may not be aware of these online resources, the true number of impacted consumers is likely even greater. *Id.* ¶ 166. The CCPA's public impact requirement is plainly met.

### 6.     Plaintiff Peabody Has Standing to Pursue Claims Under FDUTPA.

Under Indiana's choice-of-law principles, the governing law is that of the state with the "most intimate contacts" or "most significant relationship" to the events giving rise to the claim. *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 581 (7th Cir. 1994). This inquiry requires consideration of "all acts of the parties touching the transaction in relation to the several states involved." *Id.* at 581.

While Plaintiff Peabody resided in Arizona at the time of purchase, the transaction and subsequent events giving rise to his FDUTPA claim are closely tied to Florida. Plaintiff purchased his RV specifically for the purpose of relocating to Florida and did, in fact, relocate shortly after purchase. Compl. ¶ 284. Plaintiff's alleged damages occurred after Plaintiff became a Florida domiciliary. *Id.* ¶¶ 285-86. Plaintiff's interactions with Defendants regarding frame failure, including inspections and repairs, occurred in Florida. *Id.* ¶¶ 287-88. And Plaintiff ultimately sold his RV at a loss while residing in Florida. *Id.* ¶ 289. Florida law should govern Plaintiff's claim.

These facts distinguish this case from *Montgomery*, cited by Defendants, where the court refused to apply Florida law to claims brought by a man living in Texas, who purchased and maintained his plane in Texas and who was subsequently injured in Texas. The lawsuit had no connection to Florida except that it was the state where the plane's engine was installed. *Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221, 225 (S.D. Fla. 2002). Here, by contrast, Florida is the state of Plaintiff's residence at the time the defect manifested, and the situs of the

inspection and repair attempts related to Plaintiff's claims. Florida thus has the "most intimate contact" with the content of Plaintiff Peabody's claims. *NUCOR Corp.*, 28 F.3d at 581.

Even if the Court determines that Plaintiff Peabody lacks standing under the FDUTPA, Plaintiffs' FDUTPA claims should nonetheless proceed since Defendants do not contest that Plaintiff Alterman—who resides in Florida and purchased his RV in Florida—has standing. Compl. ¶¶ 220-231. And should the Court find that FDUTPA does not apply to Peabody individually, he should be considered a putative member of the Arizona subclass. *Id.* ¶ 329.

### 7.    Plaintiff O'Neal's OCSPA Claim Should Not Be Dismissed.

"[U]nder certain circumstances Ohio law recognizes that the concealment of a cause of action can toll that statute of limitations." *Grover v. BMW of N. Am., LLC*, 581 F. Supp. 3d 930, 948 (N.D. Ohio 2022) (quoting *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002)). Whether the statute of limitations is tolled due to fraudulent concealment "is generally a question of fact not suitable for dismissal at the pleading stage." *Grover*, 581 F. Supp. 3d at 948.

As discussed at length above, Defendants engaged in a deliberate campaign to conceal the frame failure defect in their RVs. Compl. ¶¶ 173-175, 179, 185–193, 199–200. As a result of this fraudulent concealment, Plaintiff O'Neal did not and could not have known that Defendants were in violation of the Ohio Consumer Sales Practices Act at the time of his purchase. Yet Defendants now ask this Court to allow them to benefit from their fraudulent acts and to dismiss Plaintiff's claim on statute of limitations grounds. At minimum, the Complaint's allegations raise fact questions that should preclude dismissal at this early stage. Discovery is necessary to determine the extent and effect of Defendants' concealment on the timing of Plaintiff's claim, and whether the applicable statute of limitations should be tolled as a result. *Grover*, 581 F. Supp. 3d at 948.

**E.      Plaintiffs' Claims Are Not Barred By the Economic Loss Doctrine.**

**1.      Plaintiffs Lack an Adequate Contractual Remedy Against Defendants.**

Defendants move to dismiss all of Plaintiffs' negligence claims as barred by the economic loss doctrine. The economic loss doctrine precludes tort liability where a plaintiff has an adequate remedy in contract. See *Lake Ridge New Tech Sch. v. Bank of New York Mellon, Tr. Co., N.A.*, 353 F. Supp. 3d 745, 759 (N.D. Ind. 2018). Its purpose is to preserve the boundary between tort and contract law where parties have had the opportunity to allocate risk and define their expectations by agreement.

Plaintiffs have no adequate remedy in contract against Defendants for the harms alleged in the Complaint. Plaintiffs did not purchase their RVs directly from Grand Design or Winnebago. Compl. ¶¶ 213, 220, 232, 242, 251, 258, 271, 290, 298, 307, 315, 322. Accordingly, they cannot enforce their sales contracts against Defendants as a remedy for the Fifth Wheels' design defects. Plaintiffs likewise could not enforce their sales contracts against the dealerships as a remedy for the harms alleged because the dealerships were not involved in Defendants' deceptive conduct, including the design, manufacture and marketing of the defective Fifth Wheels, or the orchestrated cover-up of widespread frame failure. Indeed, many dealerships are not equipped to handle frame failure and refuse to attempt such repairs. *Id.* ¶ 153.

The only contractual relationship between the parties arises through Defendants' limited warranties – yet these, too, fail to provide an adequate remedy. To begin, the warranty does not cover all Plaintiffs. It excludes Fifth Wheels with frame failures occurring before June 2024—*i.e.*, the majority—and imposes restrictive conditions that render coverage largely illusory. *See* Compl. ¶¶ 203–12. The warranty also contains unreasonable procedural hurdles, discretionary provisions that allow Defendants to avoid meaningful performance, and loopholes that limit Defendants' responsibility. *Id.* For example, Defendants can functionally reclassify design-related frame

31

failures as "normal wear and tear," which is excluded from coverage. *See id.* Even when repairs are made under warranty, the frames often fail again, offering no lasting solution. *Id.* ¶¶ 151–54, 158–60. The warranty also fails to compensate Plaintiffs for diminished resale value, property damage, and out-of-pocket repair costs. In short, the warranty falls well short of redressing the harms caused by Defendants' negligence, which far exceed Plaintiffs' commercial expectations.

Moreover, Plaintiffs could not have identified or bargained over these latent frame defects prior to purchase since Defendants concealed the true nature of the problem, depriving Plaintiffs of any meaningful opportunity to protect themselves contractually. Because Plaintiffs lack an adequate contractual remedy for the alleged wrongs, the rationale animating the economic loss doctrine is inapplicable. Plaintiffs should not be left without recourse just because Defendants structured their business relationships to avoid direct contractual liability while still controlling key aspects of product design, manufacturing, and marketing.

### 2.    Plaintiffs Allege Harm to Other Property and Out-of-Pocket Losses.

Even where it is generally applicable, the economic loss doctrine does not preclude tort recovery where a product defect causes physical damage to other property. *See Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010) ("the defendant is liable under a tort theory if the defect causes personal injury or damage to property other than the product or service itself.") "[P]roperty acquired separately from the defective good or service is 'other property,' whether or not it is, or is intended to be, incorporated into the same physical object." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 155 (Ind. 2005).

Here, Plaintiffs allege that the defective frames led to extensive structural movement and flexing, which caused physical damage to attached fixtures and systems within the RVs, including, for example, cabinetry, washers and dryers, solar panels, beds, desks, recreational equipment stored within the RV's "garage," doors, water pumps, televisions, and other fixtures that Plaintiffs

purchased separately from the RV and attached thereafter. *See, e.g.,* Compl. ¶¶ 216, 223-224, 226, 230, 236, 247, 248, 254, 261-262, 296, 301, 310, 312, 320, 325. Any such separately acquired fixtures or other products installed in Plaintiffs' RVs would qualify as "other property" under Indiana law, and further discovery is required to determine the extent to which such property was damaged by the Fifth Wheels' defective frames. *Gunkel*, 822 N.E.2d at 155. Additionally, some plaintiffs lost personal property when their RV's cargo doors opened during transit and their property fell out onto the roadway. *Id.* ¶¶ 117, 286. Damage to such property falls outside the scope of the economic loss doctrine.

### F.    Plaintiffs Plead Viable Unjust Enrichment Claims Under California, Florida, Indiana, and Ohio Law.

Finally, Defendants contend that the Court must dismiss the unjust enrichment claims pled under California, Florida, Indiana, Georgia, and Ohio law.[9] Defendants are wrong about the requirements of California and Florida law. Contrary to Defendants' contention, the California Supreme Court has clarified that California law allows "an independent claim for unjust enrichment." *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)). California courts routinely allow unjust enrichment as an independent cause of action. *See, e.g., Nava v. Kobe Steel*, 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019). Accordingly, Plaintiffs' unjust enrichment claim under California law is well-pled.

Next, with respect to their Florida claim, Defendants badly misconstrue the holding in *In re Takata Airbag Prods. Liab. Litig.*, 225 F. Supp. 3d 1241, 1261 (S.D. Fla. 2017), which held that a vehicle purchaser may pursue unjust enrichment claims against a manufacturer where they purchased the vehicle from one of the manufacturer's dealers. *Id.* Here, Plaintiff Alterman pleads

---

[9] Plaintiffs withdraw their claims for unjust enrichment under Georgia law.

that he purchased his 2022 Momentum new after speaking to Grand Design's representative. Compl. ¶¶ 220-21. Although the Complaint does not expressly plead that Alterman purchased his RV new from a Grand Design dealership, this is a reasonable inference to be drawn from allegations. Under *Takata*, Plaintiffs' Florida unjust enrichment claim is well pled.

Under Ohio law,[10] contrary to Defendants assertions, Plaintiffs allege they conferred a benefit on Defendants: substantial revenue from the purchase of their Fifth Wheels as well as payments made to Grand Design for repairs necessitated by Grand Design's defective frames. Compl. ¶¶ 34, 68, 102, 275-279. And as to Indiana law, Defendants improperly argue that unjust enrichment claims are limited to situations where plaintiffs expected defendants "would be responsible for the cost," relying on caselaw involving parties who were not paid for services rendered with an expectation of payment. *See* Def. Mot. at 30, citing *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012). However, Indiana law permits unjust enrichment claims where plaintiffs confer a benefit on defendants and do not receive the benefit of the bargain – as here, where Plaintiffs paid for defective RVs unfit for their intended use. *See Armstrong v. Deere & Co.*, No. 1:16-CV-00844-TWP-MPB, 2017 WL 4168485, at *8 (S.D. Ind. Sept. 20, 2017) (denying motion to dismiss unjust enrichment claim where plaintiff alleged he did not receive the benefit of the bargain after purchasing a defective Planter). Plaintiffs' claims are analogous to *Armstrong* and therefore should not be dismissed.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.

---

[10] Defendants incorrectly identify Plaintiff Auble, a representative of the Arizona Class, as the representative for the Ohio class. Plaintiff O'Neal is the Ohio class representative.

Dated: September 2, 2025

Respectfully submitted,

/s/ Lynn A. Toops
Lynn A. Toops
COHEN & MALAD, LLP
One Indianapolis Sq., Ste 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

James Bilsborrow (admitted *pro hac vice*)
Aaron Freedman (admitted *pro hac vice*)
Emma Dietz (admitted *pro hac vice*)
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Tel: (212) 558-5500
jbilsborrow@weitzlux.com
afreedman@weitzlux.com
edietz@weitzlux.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2025, a true and accurate copy of the foregoing Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendants' Motion to Dismiss the Amended Complaint was electronically filed with the Clerk of Court by using the CM/ECF system to all registered parties.

<u>/s/ Lynn A. Toops</u>
Lynn A. Toops
**Cohen Malad. LLP**
One Indiana Sq Ste 1400
Indianapolis, IN 46204
Tel.: 317-636-6481
Fax: 317-636-2593
Email: ltoops@cohenandmalad.com
